JAMES M. HILL

v.

ALEXANDER H. LOWDEN.

*Master and Servant—Relation—Existence of—Services Rendered—Re-
covery for—Written Contract—Construction—Custom—Evidence.*

1. Each and every part of a written contract should, when possible, have
assigned to it some meaning.

Hill v. Lowden.

2. The employer of a superintendent of construction under a written contract is not liable for the wages of a third person employed by the latter to perform the work in question, in the absence of knowledge of such employment, and of evidence of a custom authorizing the employment of a second general superintendent in such case.

[Opinion filed May 29, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Mr. G. FRANK WHITE, for appellant.

Messrs. ABNER SMITH and J. M. CLEAVER, for appellee.

GARNETT, P. J. Appellee brought an action of assumpsit against appellant to recover the balance alleged to be due him for services as superintendent of certain buildings of appellant, while they were in the course of erection on Oakwood boulevard, in Cook county. Appellee was employed by U. P. Smith at the agreed sum of $1,000 for his entire services as such superintendent. Smith's only authority to employ him was derived from the following contract:

"This agreement made this 20th day of May, 1886, between U. P. Smith and James M. Hill, witnesseth, that said Smith agrees to build for said Hill four houses on Oakwood boulevard, on lots 7 and 10, in block 3, Cleaverville addition, town of Hyde Park, Cook county, Illinois, like the two brown stone houses on Groveland avenue, in Chicago, Illinois, owned by A. H. Lowden, and known as 32 and 34 in said avenue, and have same completed on or before October 1, 1886. Two of said houses to have brown stone fronts like said Lowden's houses, and two of them to have pressed brick fronts with brown stone trimmings; said Smith to attend to purchasing of all the materials to be used in the construction of said houses, and the employment of mechanics to do the work, and to attend generally to all matters pertaining to the erection of said houses, giving the time and attention necessary to do the work to the best advantage, and for the best price pos

sible, using his best judgment and exercising his best endeavor to purchase all material at the lowest figure, and so generally to conduct said business as to build in the best manner and at the lowest price possible for the benefit of said Hill. All contracts to be made by said Smith, and all bills approved by him are to be paid by said Hill as they become due, said Smith to have the general superintendence and management of the whole business, for which service said Hill agrees to pay the said Smith the sum of $2,000 from time to time as the work progresses.

JAMES M. HILL,<br>U. P. SMITH."

At the trial, evidence was given tending to prove that Smith gave but little attention to the buildings, and that Hill, when he saw Lowden engaged there, supposed he was put there by Smith in his place. Lowden's name was on Smith's pay roll, and Hill's checks were drawn to pay the amount thereof, Hill being sick much of the time and most of his checks being drawn while he was confined to his bed. There was no evidence that Hill knew anything of Lowden's name being on the pay roll until the buildings were nearly completed, nor was there any evidence that he knew Lowden's name was on any pay roll which he paid, until he discovered that he had overpaid Smith for superintendence. Lowden made out his bill against Smith personally for the balance of $400, which he seeks to recover in this action, not describing him in the bill as agent or superintendent.

The $300 that was paid to Lowden, he admits was received from Lamb, the timekeeper of Smith. Hill testified, without contradiction, that when the buildings were finished Smith and Lowden came to the house, and wanted him to pay Smith so he could pay Lowden. Evidence was also given tending to show that Lowden did not give the buildings proper attention as superintendent. The court instructed the jury to find a verdict for plaintiff, which we think was error. The court assumed that by the terms of the written agreement between Hill and Smith, the latter could employ such assistance as he chose, and Hill was not only conclusively bound by the contracts

made by Smith, but that he could not deny that such con-
tracts had been fulfilled by the persons so employed.  By the
terms of the contract Smith agreed to be the general superin-
tendent, and in the absence of evidence of a custom authoriz-
ing the employment of another general superintendent, Hill
can not be charged a second time for services which now
appear to have been due from Smith personally.  Hill testi-
fied that Smith had the reputation of being a tremendous
hand to build buildings of that kind cheap and well, and that
he knew Smith had built a good many buildings.  Appellee
contends that the only specific duties which the contract
imposed on Smith were to purchase the material, employ
mechanics, and make all contracts, and that the words "attend
generally to all matters pertaining to the erection of said
house," and "to have the general superintendence and manage-
ment of the whole business," mean practically nothing.  This
is in conflict with the general rule of construction which
requires that each and every part of the contract shall be given
a meaning when that can be reasonably done.

"Every clause and even every word should, when possible,
have assigned to it some meaning.  It is not allowable to pre-
sume, or to concede when avoidable, that the parties in a sol-
emn transaction have employed language idly."  Bishop on
Contracts, Sec. 384.

It is true that Smith was authorized to make all contracts,
and in fact did make a contract with Lowden.  But to say
that Hill and Smith understood the authority to be, to bind
Hill to any contract, for anything, in connection with the
work described in the instrument, would be wholly unreason-
able.  If that was the intention, then the person employed to
purchase materials and make contracts might have employed
a third person as his substitute to purchase the materials,
employ mechanics and make all other contracts.  It is no more
reasonable that the person originally employed to superintend
should employ a substitute as superintendent.  As this record
now reads, neither was admissible.  Variation from the con-
tract could only be by consent of both parties.  Hill could
not consent to anything of which he was ignorant.  If he,

without objection, saw Lowden performing the duties of superintendent, the jury might be justified in finding that he had impliedly consented that Smith should fulfill his contract by putting Lowden in his place; but unless he was in some way informed that Lowden was employed as superintendent, at his expense, or some such custom as we have referred to has intervened and modified the terms of the written contract, Hill can not be charged with the expense of two general superintendents.

For the error specified the judgment is reversed and the cause remanded.

*Reversed and remanded.*

MORAN, J., dissents from the construction given to the contract.