## James Hardesty, Adm'r, v. The Forest City Insurance Co.

1. INSURANCE—*Contracts of, How Construed.*—A contract of insurance drawn by the insurer, who makes his own terms, and imposes his own conditions, will not be tolerated as a snare to the assured, and if the words employed, of themselves, or in connection with other language used in the contract of insurance, or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed to favor the assured.

2. SAME—*Construction of Policies of Insurance.*—If there is any doubt, in view of the general tenor of a policy of insurance, whether the words used are to be taken in an enlarged or restricted sense, all things being equal, that construction should be taken which is most beneficial to the assured.

3. SAME—*Change of Title by Death of the Insured.*—A policy of insurance containing the provision that "if any change takes place in the title, possession or interest of the assured in the property insured, the policy shall be void," has no application in law to a change of title caused by the death of the insured where the policy contains a clause to make good the loss to the executors and administrators of the deceased.

Assumpsit, on a fire insurance policy. Trial in the Circuit Court of Hamilton County; the Hon. ENOCH E. NEWLIN, Judge, presiding. Ver-

dict and judgment for plaintiff.  Appeal by defendant.  Heard in this court at the February term, 1898.  Affirmed.  Opinion filed August 31, 1898.

WEBB & LANE, attorneys for appellant.

When a policy provides that in case of any sale, transfer or change of title in the property insured, such insurance shall be void, the death of the assured operates such a change of title as renders the policy invalid.   1 Wood on Insurance, 712, 750; Wait's Actions and Defenses, Vol. 4, page 53; Lappin v. Charter Oak Ins. Co., 58 Barb. (N. Y.) 325; Hine v. Receiver of Homestead Fire Ins. Co., 93 N. Y. 75; Sherwood v. Agricultural Ins. Co., 73 N. Y. 447; Wyman v. Wyman, 26 N. Y. 253; Ostrander on Fire Ins., pages 239, 240, 241; Barns v. Union Mut. Fire Ins. Co., 51 Me. 110; Morrison v. Tenn. Marine Ins. Co., 59 Am. Dec. 299; Dix et al. v. Mercantile Ins. Co., 22 Ill. 272.

In this contract of insurance the condition is plain and must be interpreted according to the intention of the parties, gathered from the language employed.   Dix et al. v. Mercantile Ins. Co., 22 Ill. 272; Home M. F. Ins. Co. v. Hauslein, 60 Ill. 521.

A contract of insurance is one of indemnity, is purely personal, and does not run with the thing insured.   1 Wood on Insurance, page 695, Sec. 329; Finney v. Bedford Com. Ins. Co., 8 Met. (Mass.) 348; Arnold on Ins., Vol. 1, page 146 (Note); Phillips on Ins., Vol. 1, page 219; Duer on Ins., Vol. 2, Sec. 24; Ostrander on Ins., page 239, Sec. 77.

A. M. WILSON and STEELE, WALKER & CROSS, attorneys for appellee.

When the policy is issued to the assured, his executors, administrators or assigns, his personal representatives may maintain an action therein for the benefit of those having the title to the real estate under the will or by descent; thus if the owner of a dwelling.house insured against fire dies, and a loss thereafter accrues during the life of the policy, those having title to the real estate are entitled to the proceeds thereof.   Wood on Insurance, 713; Wyman v.

Wyman, 26 N. Y. 253; Burbank v. R. M. F. Ins. Co., 24 N. H. 550; Wood on Insurance (Banks Bros. Ed.), 237, Sec. 113.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was an action of assumpsit, in the Circuit Court of Hamilton County, by appellee against appellant, to recover on a fire insurance policy, issued by appellant to appellee's intestate.

On the 21st day of January, 1892, appellant issued its policy of insurance to Henry Hardesty, insuring, for five years, a certain property, including two small dwelling houses; on the 16th day of April, 1894, Henry Hardesty died intestate; on the 24th day of April, 1894, appellee was appointed administrator of deceased assured's estate; on the 28th day of November, 1895, the two dwelling houses covered by the policy of insurance were totally destroyed by fire; and on the 11th day of May, 1896, appellee commenced this suit.

A declaration setting out the policy *in haec verba*, and setting up the facts quite fully, containing proper averments, was, in due time, filed by appellee. To this declaration appellant filed a general demurrer. The demurrer was overruled by the court. Appellant elected to stand by its demurrer. Default was adjudged and entered. Jury impaneled. Evidence heard. Verdict in favor of appellee for $250. The court rendered judgment on the verdict against appellant.

It is insisted by appellant that the court erred in overruling its demurrer to appellee's declaration, and its counsel state their position as follows: "The grounds of demurrer and of the defense upon which we rely in this case, is that the death of Henry Hardesty * * * worked such change of title and of possession to the property insured as to make the policy of insurance absolutely void."

The language of so much of the policy as is involved in the issue raised is as follows: "And the said company

hereby agrees to make good unto the said assured, his executors, administrators and assigns, all such immediate loss or damage * * * as shall happen by fire * * * to the property * * * specified, from the 21st day of January, 1892, at noon, to the 21st day of January, 1897, at noon. * * * If the assured have or shall hereafter obtain any other insurance * * * on the property hereby insured, or any part thereof, without consent from the secretary of the company indorsed hereon; or if the above mentioned buildings or any part thereof shall be occupied or used, except as herein stated, or become vacant or unoccupied; or if the risk be increased by the erection of adjacent buildings, or by any other means whatever, without consent of the secretary of this company indorsed hereon; or if any incumbrance, by mortgage or otherwise, has been, or shall be executed thereon unless the same was fully stated in said application, or indorsed hereon by the secretary of the company; or if foreclosure proceedings shall be commenced; or if the assured fails to make known any fact material to the risk; or if any change takes place in the title, possession or interest of the assured in the above mentioned property; or if this policy shall be assigned without the consent of the secretary indorsed hereon; then in each and every such case, this policy shall be void."

In the interpretation of a contract, the purpose of the transaction between the parties must be rightly apprehended and the contract be so construed as to effect that purpose, if it be possible so to do, by giving to the language of the contract, as a whole, any reasonable meaning.

In Phillips on Insurance, at Sec. 124, it is said : " The predominant intention of the parties in a contract of insurance is indemnity, and this intention is to be kept in view and favored in putting a construction upon the policy."

In May on Insurance, Vol. 1, 3d Ed., at Sec. 174, it is said : " Having indemnity for its object, the contract is to be construed liberally to that end, and it is presumably the

intention of the insurer that the insured shall understand that in case of loss he is to be protected to the full extent which any fair interpretation will give. * * * Conditions and provisos will be strictly construed against the insurers because they have for their object to limit the scope and defeat the purpose of the principal contract."

In Wood on Fire Insurance, at Sec. 59, it is said : "It is the duty of the insurer to clothe the contract in language so plain and clear that the insured can not be mistaken or misled. * * * Having the power to impose conditions, and being the party who draws the contract, he must see to it that all conditions are plain, easily understood, and free from ambiguity. * * * Failing to employ a clear and definite form of expression, the benefit of all doubts will be resolved in favor of the assured. The courts will not permit the assured to be misled or cheated where there is any sort of justification, from the language used, for the interpretation placed by him upon the instrument. A contract drawn by one party, who makes his own terms and imposes his own conditions, will not be tolerated as a snare to the unwary, and if the words employed, of themselves, or in connection with other language used in the instrument, or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed to favor the assured."

In Vol. 1, 2d Ed., Wood, page 145: "If there is any doubt, in view of the general tenor of the instrument of writing, where the words used therein are to be taken in an enlarged or restricted sense, all things being equal, that construction should be taken which is most beneficial to the promisee. This rule of construction is especially applicable to the construction of policies of insurance."

The courts of this State have adopted and emphasized the above principles and rules for the interpretation and construction of insurance contracts. Commercial Ins. Co. v. Robinson, 64 Ill. 265; Phœnix Ins. Co. v. Tucker, 92 Ill. 64; Niagara Ins. Co. v. Scammon, 100 Ill. 644; Schroeder v.

Trade Ins. Co., 109 Ill. 157; Healey v. Mutual Accident Ass'n, 133 Ill. 556; Illinois Mut. Ins. Co. v. Hoffman, 31 Ill. App. 295; Detroit F. & M. Ins. Co. v. Chetlain, 61 Ill. App. 450.

It is also a general rule for the interpretation and construction of contracts, that " every clause and every word should, when possible, have assigned to it some meaning. It is not allowable to presume or to concede when avoidable that the parties in a solemn transaction have employed language idly." Hill v. Lowden, 33 Ill. App. 196; Bishop on Contracts, Secs. 384 and 579; Hennessy v. Gore, 35 Ill. App. 594; Hays v. O'Brien, 149 Ill. 403.

In construing the policy in this case the clause, "and the said company hereby agrees to make good unto the said assured, his executors, administrators, and assigns, all such immediate loss or damage as shall happen by fire to the property specified," must be considered in connection with the clause, " or if any change takes place in the title, possession, or interest of the assured in the above mentioned property, then  *  *  *  this policy shall be void;" and we must bear in mind that this contract must be so construed as to effect the predominant purpose of its making, if that can be done by giving the language, as a whole, any reasonable meaning; that the clause providing for indemnity must be liberally construed in favor of indemnity; that the clause providing for forfeiture must be strictly construed against forfeiture; that the words in the clause providing indemnity must be given the most enlarged meaning consistent with reason ; and the words in the clause providing forfeiture, be given the most restricted meaning consistent with reason; and that, as the insurer drew the contract, the benefit of all doubts must be resolved in favor of the assured.

It is true that, upon the death of the assured, the title to the property covered by the insurance passed by the law of descent to his heirs, and that change of title did thereby take place; but does the contract, in meaning, necessarily include change of title by death and descent? Ought the

assured to have understood, at his peril, at the time he accepted the policy, that the clause "if any change takes place in the title, possession or interest of the assured in the above mentioned property, then this policy shall be void" had reference to his death and change of title by descent? ought he to have known that, by that clause, his own death would forfeit his policy?

Appellant's counsel cite many authorities touching the effect of change of title, but they all refer to cases where the change of title was by some form of conveyance executed by the assured or by judgment or decree of court, except Wyman v. Wyman, 26 N. Y. 253; Sherwood v. Agricultural Ins. Co., 73 N. Y. 447; Miller v. German Ins. Co., 54 Ill. 53; Lappin v. Charter Oak Ins. Co., 58 Barb. (N. Y.) 325, and Hine v. Receiver of Homestead Fire Ins. Co., 93 N. Y. 75.

In Wyman v. Wyman the change of title was as to the policy; the court in that case says: "The condition in the policy which is cited by appellants refers to assignments or transfers of the policy itself or of the interest of the assured therein, and not to transfers of the title to the building insured, or the land on which it stood."

In Sherwood v. Agricultural Ins. Co. and in Miller v. German Ins. Co. there were no provisions in either of the policies that the insurance companies should make good the loss to the "assured, his executors, administrators and assigns." Nothing anywhere to indicate an undertaking or liability to the executors and administrators of the assured. In Miller v. German Ins. Co. the court comments upon that feature of the case, emphasizes it, and makes the case turn on the absence of such provision.

Lappin v. Charter Oak Ins. Co. and Hine v. Receiver of Homestead Fire Ins. Co., two New York cases, one decided in 1870 and the other in 1883, are upon facts so analogous to the case before us for determination as to make them of value in support of appellant's position, and are the only direct authority supporting that position. True, a few text writers announce the same proposition, but they refer to, and rely wholly upon, these two New York cases.

It appears to us that to sustain appellant's position, we must render the words "his executors and administrators," in the clause providing indemnity, nugatory. But counsel for appellant say we may hold with them and still give these words meaning; that these words mean, in case loss occurs in the lifetime of the assured, and payment be not made until after his death, then the insurance company shall pay his executor or administrator, and in such case, upon refusal to so pay, the executor or administrator may maintain suit.

Under the laws of this State all this would be true without the use of these words in the contract. To limit these words to that meaning would be " to presume that the parties in a solemn transaction have employed language idly; " would be to give to the words the most restricted meaning possible, when the law requires us to give them the most enlarged meaning consistent with reason. Counsel for appellant insists that if we give meaning to the clause, " If any change takes place in the title, possession, or interest of the assured in the above mentioned property," we must hold that the change of title incident to the death of the assured is within the meaning of that clause.

To so hold would be to give to the words of that clause the most extended meaning possible, when the law requires us to give to them the most restricted meaning consistent with reason. We may hold that the undertaking to make good the loss to assured's executors and administrators is a limitation upon the meaning of the words in the forfeiting clause and still give to those words and to that clause a large meaning, a meaning that shall include all imaginable changes of title, possession or interest, except only that one which contemplates the coming into existence of an executor or administrator. We may hold, that clause does not include change of title by death, and not render the clause nugatory, but leave it much meaning; leave it as much meaning as can reasonably be assumed to have been within the contemplation of any reasonable man under the same or similar circumstances, as was assumed at the time he accepted the policy sued on.

In a comparatively recent English case, Bailey v. De Crispigny, L. R., 4 Queen's Bench, 185, the court says: "But where the event is of such a character that it can not be reasonably supposed to have been in the contemplation of the contracting parties when the contract was made, they will not be bound by general words which, though large enough to include, were not used (understood) in reference to the possibility of, the particular contingency which afterward happened."

When assured paid for his insurance for a definite term of five years, and accepted his policy containing the agreement to make good to him, his executors and administrators, all loss that should happen by fire to the property covered by the insurance, within the term of five years, and not a word in the policy concerning his death, is it reasonable to suppose that it was within his contemplation, or that he understood that in the case of his death during the term, his policy would thereby become void?

In Georgia Home Ins. Co. v. Kinnier's Adm'r, 28 Grattan's Reports (Va.) 88, the condition in the policy was: "And if the title of the property is transferred or changed, * * * the policy shall be void." In discussing that condition in the policy the court, at page 111 of the opinion, says: "Moreover it is to the last degree unreasonable to suppose that any sane man would accept a policy of insurance against loss by fire, if he understood it, which contained a provision for immediate forfeiture by reason of his death and consequent descent of title to his heirs."

In Richardson's Adm'r v. German Ins. Co. of Freeport, 89 Ky. 571, a recently decided case, all the provisions of the policy were the same, word for word, as the provisions of the policy in the case before us; the assured died before the loss occurred, and suit was brought by his administrator. The court says: "The single question presented is, whether the policy became void and of no effect upon and by reason of the death of the assured, which occurred before the destruction of the property."

The court in that case held that the insurance was for a specified term, that the agreement was to make good unto,

not merely the assured himself, but his executors and administrators as well, loss that might happen by fire to the property covered by the insurance, whether such loss occurred before or after the assured's death, and says, to treat the death of the assured as a termination of the policy and all liability under it, would be contrary to the express terms of the policy, and render the stipulation for payment to the personal representatives of the assured superfluous, and allow the company to retain the full consideration paid, while being held to only part performance of its agreement. "It is true, as argued, the property might have been destroyed before, though the loss is not made good until after his death; but the stipulation to pay his personal representatives was not necessary to meet such contingency, because the amount due could have, in such case, been collected without."

The "condition of forfeiture mentioned may, without destroying or lessening its proper meaning or effect, be reconciled with a continuation of the policy after such death to the end of the period, and it therefore should be done, rather than defeat what was elsewhere in the policy clearly provided for."

To our minds the conclusion reached by the New York courts is not well supported in sound reason, does violence to many of the established rules for the interpretation of insurance contracts, is fairly overborne by the weight of authority, and ought not to be adopted as the law in this State.

The judgment of the Circuit Court is affirmed.