## Metropolitan Life Ins. Co. v. Peter J. Larson and Elizabeth Larson.

85    143
94    ²121
85    143,
103    551.

1. INSURANCE—*Untrue Statements in Applications.*—Where a person makes true answers to the questions in his application for insurance, the validity of the insurance is not affected by the falsity of the answers inserted by the agent of the company, even though the application contains a stipulation that the agent took it as agent of the insured, and the insurer will be liable notwithstanding the fact that the answers were not true.

2. SAME—*Applications Prepared by Agents of the Company.*—Where an agent of an insurance company visits an applicant foi insurance at his home and asks him some formal questions concerning his age, residence and employment, but does not read the application to him, and fills in the answers, such person must be considered as the agent of the company and not of the applicant, and the company will be bound by the statements made by him, notwithstanding the fact that the application was signed by the applicant.

3. SAME— *Validity, When Not Affected by False Answers in the Application.*—False answers in an application for insurance do not necessarily invalidate a contract of insurance unless such answers were known to be false by the applicant at the time they were made, and were willfully made by him for the purpose of defrauding the company.

Assumpsit, on a policy of life insurance. Trial in the Circuit Court of Winnebago County; the Hon. CHARLES E. FULLER, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1899. Affirmed. Opinion filed October 12, 1899.

L. L. MORRISON, attorney for appellant.

The parties to all contracts in writing are supposed to have the intentions which are clearly manifested by the terms thereof. Richardson v. Maine Ins. Co., 46 Me. 394.

When the genuineness of a signature to an instrument is established, it affords *prima facie* evidence that the contents of the instrument were known to the subscriber, and that it is his act, and hence the burden of proof is upon those who assert the contrary, to overcome this *prima facie* evidence. Ins. Co. v. Gray et al., 80 Ill. 28; Conn. Mut. Life Ins. Co. v. Young, 77 Ill. App. 440.

If an applicant for life insurance is required to answer questions relating to material facts in writing, and to subscribe his name thereto as part of the application upon which the policy is issued, it is his duty to read the answers before signing them, and it will be presumed that he did read them. N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519.

There is no presumption that an applicant for a policy of insurance was ignorant and misinformed of the contents of the application signed by him. It devolves upon those alleging such ignorance and want of information to make proof of it, but it is not established by the mere fact that

assured signed a paper, written out by another, when no attempt is made to deceive or mislead him. Insurance Co. v. Gray, 91 Ill. 159.

It is the duty of the insured to know what his contract of insurance is, and, in the absence of any fraud in the making of the same, he must be held to a knowledge of its conditions, as he would be in the case of any other contract or agreement. Cleaver v. Insurance Co., 65 Mich. 527; National Union v. Arnhorst, 74 Ill. App. 482.

A statement in an application for a policy of insurance that the applicant has not consulted, or been prescribed for by a physician, is a warranty, and, if untrue, will avoid the contract of insurance. National Union v. Arnhorst, 74 Ill. App. 482; Life Insurance Co. v. Young, 77 Ill. App. 440; Miles v. Conn. Mut. Life Ins. Co., 3 Gray, 580; Cobb v. Covenant Mut. Ben. Ass'n, 153 Mass. 176; Met. Life Ins. Co. v. McTague, 49 N. J. L. 587.

Where an application is a part of the insurance contract, the assured's answers to the questions put to him are warranties, and must be truthfully made in order that the contract of insurance bind the company. Conn. Mut. Life Ins. Co. v. Young, 77 Ill. App. 440, and cases there cited.

R. K. WELSH, attorney for appellees.

The agent of an insurance company who solicits and takes applications is the agent of the company, and all of his acts are the acts of the company, notwithstanding a provision in the application that the insured makes him his agent or that the application is written by the insured or his own proper agent. O'Farrell v. Metropolitan Life Ins. Co., 22 App. Div. Sup. Court N. Y. 495; 48 N. Y. Supp. 199; Sprague v. Holland Purchase Ins. Co., 69 N. Y. 129; Mowry v. Rosendale, Receiver, 74 N. Y. 360; Union Ins. Co. v. Wilkinson, 13 Wall. 222; American Life Ins. Co. v. Mahone, 21 Wall. 152; Clubb v. American Accident Co. (Ga.), 25 S. E. R. 333; Commercial Ins. Co. v. Ives, 56 Ill. 402; Royal Neighbors of America v. Boman, 177 Ill. 27.

In the case of insurance policies the modern doctrine,

sustained by the great weight of authority, is that where the application is drawn by the company itself, or by its authorized agent, and the statements or the answers to questions contained therein are written by the company, or its agent, in making up the application, and without any fraud or collusion on the part of the applicant, that is, if the application, when signed by the applicant, is the work of the insurance company itself, then in that case the insurer is estopped from controverting the truth of the statements contained in the application in an action upon the contract of insurance between the parties thereto. Union Ins. Co. v. Wilkinson, 13 Wall. 222; American Life Ins. Co. v. Mahone, 21 Wall. 152, New Jersey Mutual Life Ins. Co. v. Baker, 94 U. S. 610; VanHouten v. Metropolitan Life Ins. Co. (Mich.), 68 N. W. Rep. 982; Temmink v. Metropolitan Life Ins. Co., 72 Mich. 388; North American Fire Ins. Co. v. Throop, 22 Mich. 146; O'Farrell v. Metropolitan Life Ins. Co., 22 App. Div. Sup. Court N. Y. 495; 48 N. Y. Supp. 199; Grattan v. Metropolitan Life Ins. Co., 92 N. Y. 274; Miller v. Phœnix Mut. Life Ins. Co., 107 N. Y. 292; Flynn v. Equitable Life Ins. Co., 78 N. Y. 568; Mowry v. Rosendale, Receiver, 74 N. Y. 360; Sprague v. Holland Purchase Ins. Co., 69 N. Y. 129; McGurk v. Insurance Co., 56 Conn. 528; Clubb v. American Accident Co. (Ga.), 25 S. E. Rep. 333; Marston v. Kennebec Mutual Life Ins. Co. (Me.), 36 Atl. Rep. 389; Patten v. Insurance Co., 40 N. H. 375; Insurance Co. v. Cusick, 109 Pa. St. 157.

The doctrine of the foregoing cases is adopted by the courts of this State. Commercial Ins. Co. v. Ives, 56 Ill. 402; Andes Ins. Co. v. Fish, 71 Ill. 620; Phenix Ins. Co. v. Stocks, 149 Ill. 319; Royal Neighbors of America v. Boman, 177 Ill. 27.

Under the circumstances surrounding the taking of the application in this case, the law did not cast upon the insured the duty to read the application before he signed it. Neither is the failure on the part of the insured to examine and object to his policy such negligence as will defeat the right of appellees to prove that this application is the work

of the company.    Contracts of insurance may be varied by parol evidence of fraud or mistake, even if loss or death has occurred.    Nor does the fact that the application is made a part of the contract and attached to the policy alter this rule.    Kister v. Lebanon Mutual Ins. Co. (Pa.), 5 L. R. A. 646; Marston v. Kennebec Ins. Co., (Mo.), 36 Atl. Rep. 389; Fitchner v. Fidelity Mut. Fire Ass'n (Ia.), 72 N. W. Rep. 530; Slobodisky v. Phoenix Ins. Co. (Neb.), 72 N. W. Rep. 483; Royal Neighbors of America v. Boman, 177 Ill. 27.

No fraud or wrong was in fact perpetrated upon the insurance company by obtaining this contract of insurance. The applicant did not have consumption when the application was made.    The form of consumption which killed him may run its course in from four to six weeks.    Metropolitan Life Ins. Co. v. Mitchell, 175 Ill. 322; Tucker v. United Life & Acc. Ins. Ass'n (N. Y.), 30 N. E. Rep. 723.

Mr. Justice Higbee delivered the opinion of the court.

This was an action of assumpsit on a policy of insurance, issued by appellant on the life of David R. Larson, a minor son of appellees, payable to them in the event of his death.

The application for the policy of insurance in suit, which was partly printed and partly in writing, was signed by the insured September 10, 1897.    He was examined by appellant's local medical examiner September 12, 1897, and received the policy of insurance September 16, 1897.    He died of pulmonary consumption December 4, 1897.    The application, signed by the insured, contained the following statements, among others :

" I never had any of the following complaints or diseases : * * Consumption, disease of lungs."  " I am now in sound health; * * * nor have I any physical * * * defect or infirmity of any kind."   " I have not been under the care of any physician within two years."  " No one of my parents or grandparents, brothers or sisters, ever had any consumption or any pulmonary or scrofulous disease."

Under the above statements in the application there was also the following :

" And I further declare, warrant and agree, that the rep-

resentations and answers made above are strictly correct and wholly true; that they shall form the basis and become part of the contract of insurance if one be issued, and that any untrue answers will render the policy null and void; and that said contract shall not be binding upon the company unless upon its date and delivery the insured be alive and in sound health."

The policy included as a part of it, a copy of said application. The declaration contained special counts setting up the policy. The general issue and three special pleas were interposed by appellant. The special pleas denied the right of appellees to recover by reason of the breach, by said David R. Larson, of the above warranties contained in the application and policy. Appellees replied " that David R. Larson did not make the statements and answers, or either of them, as set forth and charged in said pleas." There was a trial by jury and a verdict for plaintiffs for $526.25, and also several special findings by the jury. A motion for new trial was overruled and judgment rendered on the verdict.

The main contention of appellant in defense of the action is, that the statements of the insured, in his application as above set forth, were false, and that being made warranties they rendered the policies void. On the other hand appellees insist that the statements in the application were in fine print, were never read over to the insured and were not made by him, but were in fact the statements of the agent who took the application, and that appellant is estopped from denying their truth. There is no proof, aside from the fact that the insured signed the application, that he knew its contents. The only witness who testified on this point was his mother, one of the appellees, who swore that the agent did not read the application over to David or tell him what was in it, and the latter did not read it; that the agent asked him where his home was, where he was born, how old he was, what he worked at, where he worked and how long he had worked there; that no other questions whatever were asked of the insured by the agent.

It appeared from the evidence, however, that on August

24, 1897, the insured had called upon a physician, who pre-
scribed for him and told him he had trouble with his lungs,
but did not tell him the nature of the trouble.  The physi-
cian testified that the prescription was for an inflammatory
condition of the lungs, which was probably tubercular, and
that he told David that he wished to talk to his parents
about it.   That he did not see David any more, and did not
see his mother until October 1, 1897, after the insurance
had been issued, when she paid him for the prescription;
that so far as he knew, neither David nor his parents knew
that he had pulmonary tuberculosis until October 1, 1897,
when he told the mother that such was probably the case.

Under all the circumstances, we are not prepared to say
that the statement of the insured, even if it should be con-
sidered his statement, that he had not been under the care
of a physician for two years, was untrue.   He had indeed
received a prescription from a physician for a cold, which
perhaps to some extent involved his lungs, but it can hardly
be said that he was under the care of a physician in the ordi-
nary sense of that term, and the jury specially found that
he was not under such care.

There is no evidence in the record showing that David
was not in sound health at the time he made his application
for insurance.   The physician who had previously prescribed
for him testified that at the time he last saw David he ap-
peared, so far as external indications are concerned, to be
ruddy and in sound health.   Appellant's local medical ex-
aminer, who examined him on September 12, 1897, reported
that he had made a physical examination of the lungs of
the "life proposed," and found no indications of disease;
and also that he was of opinion "said life" was in good
health.   It is true that death from pulmonary tuberculosis,
or quick consumption, followed within three months after
the application for insurance.   It appears from the testi-
mony of the physician who had prescribed for David, that
there is a for  of pulmonary tuberculosis or consumption
which may run its course in from two to four weeks, and
the same physician testified that " such a thing could be pos-

sible, that he (David) could have been in sound health on the 12th day of September, 1897."

In the case of The Metropolitan Life Ins. Co. v. Mitchell, 175 Ill. 322, which was similar to the present case, in some respects, it is said :

" The assured took out the policy March 18, 1894, and died of consumption March 31, 1895. The defense interposed was, that to secure the insurance he had made false statements as to his former condition, especially as to not having consumption or bronchitis, and as to not having consulted a physician. The company offered evidence to show by a physician who treated deceased January 8, 1895, a little over two months before his death, that he had consumption, and that the disease, in his opinion, had existed for at least eighteen months. On the other hand, a physician of large experience testified that a person may contract the disease of consumption and die of it in six weeks. * * * In view of the nature and character of the evidence offered, in support of the good faith and truthfulness of the representations in the application, as well as in view of the common knowledge that the disease sometimes runs its course rapidly, the judgment is believed to be fully sustained."

It also appeared from the evidence that a sister of the insured had died in 1890, and that the physician in charge, who was a witness in this case, ascribed the cause of her death to pulmonary tuberculosis. The witness, however, testified that the sister also had tubercular ulceration of the hip, and that the pulmonary disease was secondary to the hip disease; that the germs were taken from the hip and deposited in the lungs, and that was " what caused the mischief."

The insured was only about ten years of age at the time the death of his sister occurred, and the evidence failed to satisfy us that he knew that she died of consumption. The proof upon the whole does not show that the insured knowingly made any false statement to the agent of the company for the purpose of obtaining the insurance, and thereby perpetrate a fraud upon appellant.

Appellant contends, however, that it was the duty of the applicant to read the application signed by him, and that having failed to do so, the beneficiaries are bound by the

answers therein contained.  In support of this view, the case of New York Life Insurance Co. v. Fletcher, 117 U. S. 519, is .cited.   The rule laid down in that case, however, is expressly repudiated by the Supreme Court of our State in the case of Royal Neighbors of America v. Boman, 177 Ill. 29, where it is said that " whether the beneficiaries should be estopped from questioning the truth of the answers con-tained in the application, also depends upon the peculiar facts of each case, and the relation of the parties."

In the case under consideration the applicant was a boy, only seventeen years of age, who worked in a butcher shop, and was presumably not possessed of such business knowl-edge as would lead him to scrutinize carefully, or to fully understand the import of the application signed by him. In such case the question arises as to whether the agent who took the application was really the agent of the insured or of appellant.

In the case of Royal Neighbors of America v. Boman, *supra*, it was said:

" It is notorious that the contracts of insurance are, on the part of the insured, entered into without the advice of counsel, and chiefly upon the representations of the agents of the insurer.   Such agent is justly looked upon as the accredited agent of the company, in whom it has con-fidence, and holds out as worthy of the confidence of its patrons.   *   *   *   Where one makes true answers to the questions in an application for insurance, the validity of the insurance is not affected by the falsity of the answers inserted by the agent of the company, even though the application contained a stipulation that the agent took the application as the agent of the insured."

And in that case the company was held liable, notwith-standing the fact that the answer inserted by the agent to a certain question was not true.   See also Insurance Co. v. Wilkinson, 13 Wall. (U. S.) 222.

In this case the insured appears to have been solicited to take out a policy by the agent of the company, who visited him at his home and spent several hours with him.   Even at the end of that time the insured hesitated and would not consent to sign the application until he had asked his mother

whether he should insure or not. She told him to do as he pleased, and he then consented to make the application. The agent only asked him some formal questions concerning his age, residence and employment, and the answers were filled in by the agent himself. The application was not read to the applicant, and he does not appear to have had any information concerning its contents.

Under all the circumstances of the case, the agent who took the application must be considered as the agent of the company and not of the insured, and, as the application was made out by the agent, the company must be bound by the statements made by him, notwithstanding the fact that the same was signed by the applicant.

We think the verdict of the jury was warranted by the evidence, and that the judgment should be affirmed. Judgment affirmed.