## Provident Savings Life Assurance Society v. Isaac Cannon, Adm'r.

1. PRACTICE—*Breach of Warranties or Representations Must Be Pleaded in Defense.*—In a suit on a life insurance policy, where the plaintiff produces the policy, the identity of which is admitted, and proofs of death duly executed, and a letter from the company acknowledging receipt of proofs of death in due time, all of which are offered and admitted in evidence without objection, a *prima facie* case is made out in his favor. To avail himself of such matters as appear in the

Provident Savings Life Assurance Society v. Cannon.

application without regard to whether they are warranties, or representations merely, their falsity or a breach by the assured must be set up and proved by the defendant as matter of defense.

2. SAME—*Commission to Take Depositions Must Be Followed.*—A commission to take depositions may specifically name any competent, disinterested person, or it may designate generally any judge, any master in chancery, justice of the peace, notary public, or it may designate any judge, master in chancery, justice of the peace or notary public; or it may designate a particular person; as A B; or any judge, master in chancery, notary public or justice of the peace, etc. In whatever form the commission runs, it can only be executed by the commissioner named in the commission or designated therein. He must be a person expressly named in the commission, or he must be a person of a class expressly designated in the commission. He gets his power to act from the commission and must be embraced within its language.

3. CONSTRUCTION OF CONTRACTS—*Is for the Court.*—The construction of a contract for insurance as well as of other contracts is for the court. In the interpretation of a contract the purpose of the transaction between the parties must be rightly apprehended, and the contract be so construed as to effect that purpose, if it be possible so to do, by giving to the language of the contract, as a whole, any reasonable meaning.

4. SAME—*Insurance Contract is One of Indemnity.*—The predominant intention of the parties in a contract of insurance is indemnity, and this intention is to be kept in view and favored in putting a construction upon the policy. Having indemnity for its object, the contract is to be construed liberally to that end. and it is presumably the intention of the insurer that the insured shall understand that in case of loss he is to be protected to the full extent which any fair interpretation will give. Conditions and provisos will be strictly construed against the insurers, because they have for their object to limit the scope and defeat the purpose of the principal contract.

5. SAME—*Insurance Contract To Be Construed Liberally in Favor of Promisee.*—If there is any doubt, in view of the general tenor of the instrument of writing, whether the words used therein are to be taken in an enlarged or restricted sense, all things being equal, that construction should be taken which is most beneficial to the promisee. This rule of construction is especially applicable to the construction of policies of insurance.

6. WARRANTIES—*Construction of.*—The rule that a warranty, if affirmative, must be strictly and exactly true, and if promissory, must be literally fulfilled, and that it binds the assured as made, no matter whether the breach proceeds from fraud, negligence, misinformation, or to what cause non-compliance is attributed, is an exceedingly harsh rule, and courts universally hesitate to apply it, except where, after considering all the language pertaining to the contract together, it is apparent that both parties so understood and intended it. If it be at all

doubtful in meaning or contains contradictory provisions, or any statement from which the assured might have been led to believe that his policy would not be rendered void by reason of the fact that after his death it might be found that some of his statements, though honestly made, " were untrue in the slightest particular," then the courts will not hold that the statements are strict affirmative warranties, though it may be so stated in some part or parts of the contract.

7. INSURANCE POLICY—*Where Agent Has Knowledge of Irregularity.* —An insurance company can not insist upon the forfeiture of a policy for any cause within the knowledge of its agent at the time the policy was issued.

8. INSURANCE—*Materiality of Facts Concealed in Application— Question of Fact.*—To be of avail as a defense. defendant must prove that such answers and statements, or one of them, are fraudulent or untrue; that applicant knew that they were false at the time they were made; and that the fact concealed or the falsehood expressed was material to the risk; and these questions are all questions of fact for the jury to determine.

Assumpsit, on a life insurance policy. Appeal from the Circuit Court of Crawford County; the Hon. ENOCH E. NEWLIN, Judge presiding. Heard in this court at the February term, 1902. Affirmed. Opinion filed September 11, 1902.

OTIS H. WALDO and CALLAHAN & JONES, attorneys for appellant.

In the absence or sickness of the officer designated to take depositions, another officer empowered by law may be substituted. Cole v. Choteau, 18 Ill. 439; Brown v. Luehrs, 79 Ill. 581; Stowell v. Moore, 89 Ill. 564; Brackett v. Nikirk, 20 Ill. App. 527.

A warranty must be exactly fulfilled and literally true. Prudential Ins. Co. v. Friedericks, 41 Ill. App. 419; Bloomington M. L. B. Ass'n v. Cummins, 53 Ill. App. 530; Conn. Mut. L. I. Co. v. Young, 77 Ill. App. 440.

Where the answers in the application are warranties, and any of them are untrue, evasive, or so made as to conceal any fact fairly called for by the questions, whether intentional or not, there can be no recovery. Morgan v. Bloomington M. L. B. Ass'n, 32 Ill. App. 79; Bloomington M. L. B. Ass'n v. Cummins, 53 Ill. App. 530; Conn. M. L. I. Co. v. Young, 77 Ill. App. 440; Cont. L. I. Co. v. Rogers, 119 Ill. 482.

A misrepresentation of a material matter about which specific inquiry has been made, exonerates the insurer. Bloomington M. L. B. Ass'n v. Cummins, 53 Ill. App. 537; Thomas v. Fame Ins. Co., 108 Ill. 91.

Only notice which is given to the agent at the time of the application for insurance, of facts material to the risk, will prevent the insurer from insisting upon a forfeiture for causes within the knowledge of the agent. Phenix Ins. Co. v. Hart, 149 Ill. 522; Home Ins. Co. v. Mendenhall, 164 Ill. 466; Atlantic Ins. Co. v. Wright, 22 Ill. 473; F. & M. I. Co. v. Chesnut, 50 Ill. 116; Com. I. Co. v. Ives, 56 Ill. 402; Andes Ins. Co. v. Fish, 71 Ill. 620; St. P. F. & M. I. Co. v. Wells, 89 Ill. 82; American Ins. Co. v. Luttrell, 89 Ill. 314.

No formal declaration of forfeiture of an insurance policy upon breach of a condition therein contained is necessary, but it will be sufficient to set up such breach when sued for the loss. U. S. Life Ins. Co. v. Ross, 159 Ill. 488; Schimp v. Cedar Rapids I. Co., 124 Ill. 354.

Gee & Barnes, J. E. McGaughey and Bradbury & Mac-Hatton, attorneys for appellee.

" When an assured fully discloses to the agent the necessary facts, or the company becomes otherwise cognizant of them, they are estopped to deny the liability on such grounds." Andes Ins. Co. v. Fish, 71 Ill. 620; Globe Mutual Ins. Co. v. Wagner, 90 Ill. App. 444.

" When the assured disclosed the facts to the agent, and the agent wrote down the answers to the questions in the application, the company can not avoid the policy on the ground of warranties." Phenix Ins. Co. v. Stocks et al., 149 Ill. 319; Rockford Ins. Co. v. Nelson, 65 Ill. 415; Home Ins. Co. v. Mendenhall, 164 Ill. 458; Michigan Mutual Ins. Co. v. Leon, 37 N. E. Rep. 584; Hart v. Niagara Ins. Co., 38 Pac. Rep. 213.

Mr. Justice Creighton delivered the opinion of the court.

This was an action of assumpsit, in the Circuit Court of Crawford County, by appellee against appellant, to recover

on a life insurance policy. Trial by jury. Verdict and judgment in favor of appellee for $5,404.16. In connection with their general verdict, the jury returned answers to special interrogatories submitted on behalf of appellant, as follows:

" 1. Did the insured, William Cannon, at the date of the application for the policy here sued on, or had he previously thereto, had paralysis? A. No. 4. Did the insured, William Cannon, have unconsciousness at any time before the date of the application for the policy here sued on? A. No. 5. Did the insured, William Cannon, ever have any sickness, injury or infirmity whatever, which was not named in the application for the policy here sued on? A. No. 6. Was or was not Dr. H. W. Ziegler the usual medical attendant of the insured, William Cannon? A. Yes. 7. Was the insured, William Cannon, insured in any company or society other than the Ætna Life, at the date of his application for the policy here sued on? A. No. 10. Had any company or association ever refused to issue a policy of insurance on the life of the insured, William Cannon, before the application was made for the policy here sued on? A. Yes. 13. Was William Cannon in his usual health, good and sound, at the time he made application for the policy here sued on? A. Yes."

And the jury also returned answers to special interrogatories submitted on behalf of appellee, as follows:

" 1. Was John J. Buchannan the agent of defendant at the time he took the application for insurance of William Cannon? A. Yes. 2. At the time, did he know that the said William Cannon had in November, 1896, a stroke of paralysis? A. Yes. 3. At the time, was he acquainted with the fact of the sickness of William Cannon in November, 1896? A. Yes. 4. Did the said John G. Buchannan know when he took the application, that Cannon had been refused insurance by Des Moines Life Association? A. Yes. 5. Did the said John G. Buchannan write the answers in the application? A. Yes. 6. Did he read them over to the said William Cannon? A. No. 7. Did said William Cannon make any false answers or suppress any material facts to either John G. Buchannan or the medical examiner? A. No. 8. Did Dr. Pinkstaff, the medical examiner, know of the sickness of William Cannon in 1896, before he sent in the application? A. Yes. 9. Did the

medical examiner know of the fact of the rejection of Cannon by the Des Moines Life Association or other companies before he sent in the application? A. Yes."

The declaration was in the usual form. To the declaration appellant pleaded the general issue, and the parties entered into a stipulation to the effect that either party might offer any proofs which would be competent under any special plea, and any proper replication thereto, in the same manner as if such special pleas and replications had been filed. The defense relied on by appellant, as stated by its counsel, was, "that the application was in express terms made a part of the contract of insurance, and the answer of the applicant to questions asked in the application were warranted to be true, but that some of the applicant's answers to the questions asked in the application were in fact fraudulent or untrue." Among the questions and answers contained in the application are the following:

"Have you now or have you ever had apoplexy? No. Dizziness or vertigo? No. Paralysis? No. Unconsciousness? No. Have you ever had any sickness, injury or infirmity whatever, not already named? If so, state the number of attacks, and the date, location and duration of each. Ans. No. Give the name and residence of your usual medical attendant. Ans. Dr. Camplain, Russelville, Illinois. When and by what physicians were you last attended, and for what complaint? (Answer fully and specifically.) Dr. Camplain. Billious attack. Has any company, society or benefit organization rejected or limited your application for insurance? Particulars required. Ans. No. Has application to grant or restore assurance on your life ever been made which was not complied with in the form and amount asked for? If so, state every such case, when, and the cause and causes. Ans. No."

Appellant's counsel contend the above quoted answers were fraudulent or untrue in this, that the assured, in 1896, was sick; that he was on that occasion unconscious and that he then had apoplexy; that in 1897 he made application to the Des Moines Life Association of Des Moines, Iowa, and that this application was rejected, and that Dr. Camplain of Russelville, Illinois, was not his usual medical attendant.

Upon the trial in the Circuit Court, appellee produced the policy, the identity of which was admitted, and proofs of death duly executed, and a letter from appellant acknowledging receipt of proofs of death in due time, all of which were offered and admitted in evidence without objection, and here appellee rested. This, under the issues as raised in the pleadings, made a *prima facie* case in favor of appellee. In such case it is not necessary for the plaintiff to either allege or prove such matters as appear in the application, only. To be availed of, without regard to whether they are warranties, or representations merely, their falsity or a breach by the assured must be set up and proved by the defendant as matter of defense. Herron v. Peoria Life Insurance Co., 28 Ill. 235; Illinois Insurance Co. v. Stanton, 57 Ill. 354; Mutual B. Life Ins. Co. v. Robertson, 59 Ill. 123; Grange Mill Co. v. Western Assurance Co., 118 Ill. 396; Continental Life Insurance Co. v. Rogers, 119 Ill. 474; Globe Life Insurance Ass'n v. Wagner, 188 Ill. 133.

Appellant produced and put in evidence the application, consisting of three parts: "Part 1" expresses a request for assurance upon the life of the appellant, in the sum of $5,000, and embraces twenty-four questions and answers, and the following:

"I hereby warrant and agree on behalf of myself, and for any person who shall have or claim any interest in any policy issued under this application, as follows: 1. That I will not within two years from the date of the policy to be issued under this application, travel or reside in any part of the Torrid Zone, or north of the parallel of sixty degrees north latitude, and that I will not during said two years, personally engage in blasting, mining, submarine labor, aeronautic ascensions, the manufacture, handling or transportation of highly inflammable or explosive substances, or serve upon any vessel, boat or railroad, or other hazardous occupation, except upon the written permission of the society in every such case. 2. That self-destruction, whether sane or insane, voluntary or involuntary, or death resulting from actual or attempted violation of law, are risks not assumed by the society within said two years. In any distribution of surplus or apportionment of profits, the principles and methods which may be adopted by the society

for such distribution or apportionment, and its determination of the amount to be so distributed or apportioned, and of the amount belonging to any policy which may be issued under this application, shall be conclusive upon the assured under said policy and upon all parties having or claiming any interest thereunder. 4. That the proofs of death required shall be made upon the blanks furnished by the society, and shall include all information required thereby. That all provisions of law forbidding any physician who has or shall have attended me from disclosing any and all information which he acquired by such attendance, are hereby expressly waived, and such waiver is a part of the consideration for any policy to be issued hereunder. 6. That the contract contained in the policy to be issued hereunder, and in this application, shall be construed according to the laws of the State of New York. That all the statements contained in part I and part II of this application, by whomsoever they are written, are warranted to be full, true and complete, and with the stipulated premium and the waiver hereinbefore mentioned shall be the sole consideration of the contract with the society if any policy or policies be issued, reinstated or renewed thereon, and that if any concealment, or fraudulent or untrue statement be made, or if at any time any covenant or agreement herein made shall be violated, said assurance shall be null and void; and all payments made or accepted on account thereof shall be forfeited to the society, except to the extent as provided in said policy; and that the society shall incur no liability under this application until it has been received, approved, the policy issued thereon by the society at the home office, and the premium has actually been paid in cash to and accepted by the society, or its duly authorized agent, during my lifetime and good health."

Three of the questions and answers embraced in this part of the application are: "Age at nearest birthday? Sixty." "Do you agree that no statements, promises, or information, made or given by, or to, the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the society, or in any manner affect its right, unless such statements, promises or information be reduced to writing and presented to the officers of the society at the home office with this application, and no agent of the society shall have power to waive any of the terms and conditions of any policy to be issued hereunder, or to accept in payment of the first premium, under such policy, anything except cash? Yes." "Has appli-

cation to grant or restore assurance on your life ever been made which was not complied with in the form and amount asked for? If so, state every such case, when, and the cause or causes. No."

"Part II. Statements to the Medical Examiner." This part contains more than fifty questions and answers. Among such questions and answers are: "Place and date of birth? Crawford county, Illinois, November 22, 1839. Have you now, or have you ever had, apoplexy? No. Paralysis? No. Dizziness or vertigo? No. Unconsciousness? No. Have you ever had any sickness, injury or infirmity, whatever, not already named? If so, state the number of attacks, and the date, location and duration of each. No. Give the name and residence of your usual medical attendant? Dr. Camplain, Russelville, Illinois. When and by what physician were you last attended, and for what complaint? Answer fully and specifically. Dr. Camplain; billious attack. Has any company, society or benefit organization rejected or limited your application for assurance? Particulars required. No." And this part contains the following: "I hereby declare that I have read and understand all the above questions and the answers thereto, and they are hereby made part of my application for assurance by the Provident Savings Life Assurance Society of New York, and I hereby warrant said answers, as written, to be true, and that I am the person described above, and in part I of this application, signed by me. William Cannon, person examined. Witness, J. T. Pinkstaff, M. D. Dated this 24th day of August, 1899."

"Part III. Medical Examiner's Report." On the back of part III is the following: "The medical examiners of this society are officers regularly commissioned in the society's service." On the face of this part is a direction, as follows: * * * "The examining physician is required to explain any of the answers, where space did not permit, and make such other memoranda as he may deem necessary to a full understanding of the case." In this part of the application the medical examiner answers more than thirty questions, some of which, with his answers thereto, are: "How long have you personally known the applicant? Ten years. Does the applicant's appearance indicate good health? Yes. What is your opinion as to his occupation? Farmer. What is your opinion as to the effect upon his constitution of any former injury or sickness? Good. Are his statements in part II, as to the use of stimulants or nar-

cotics, in your opinion, complete and truthful? Yes. Are the brain and nervous system entirely free from tendency to or indications of disease? Yes. Are the heart and blood vessels free from any indications of disease? Yes. Do you recommend the risk? Yes. Under the classification given on the opposite page, how do you rate the party? Class A." (This class includes only those "in perfect health.") " Was the examination made in private, and with no person present except yourself and the applicant? Yes." To this is added: "I hereby declare that I have this day carefully examined the above named person, being the same person described in parts I and II of this application; that I have attentively considered the statements made by him therein, and have myself written those in part II, and have seen him write his signature thereto. Examined at his residence, Crawford Co., Ill., the 24th day of August, 1899. Hour, 2 P. M. J. F. Pinkstaff, M. D., medical examiner for society."

The policy issued to the assured in pursuance of the application above mentioned and quoted from, contains the following: "This assurance is granted in consideration of the statements and agreements in the written and printed application for this policy, which is hereby made part of this contract; and of the payment of two-hundred and ninety-two and 30-100 dollars on or before the ninth day of September, in every year during the continuance of this policy;" and on the back thereof is, among other conditions, the following: "Due proof of the age of the assured must be submitted with proofs of death, and the amount of the assurance due under this policy at its maturity, shall in no case be more than the premium charged would have purchased at the society's rates in use at the date of issue of this policy for the assured's true age;" and also: "This policy and the application herefor, taken together, constitute the entire contract. Agents are not authorized to make, alter or change the contract or to waive any forfeiture thereof, or to extend this assurance, or to grant permits, or to bind the society in any way."

The construction of a contract for insurance as well as of other contracts is for the court. In the interpretation of a contract, the purpose of the transaction between the par-

ties must be rightly apprehended and the contract be so construed as to effect that purpose, if it be possible so to do, by giving to the language of the contract, as a whole, any reasonable meaning.   In Phillips on Insurance at Sec. 124, it is said :

" The predominant intention of the parties in a contract of insurance is indemnity, and this intention is to be kept in view and favored in putting a construction upon the policy."

In May on Insurance, Vol. 1, 3d Ed., at Sec. 174, it is said:

" Having indemnity for its object, the contract is to be construed liberally to that end, and it is presumably the intention of the insurer that the insured shall understand that in case of loss he is to be protected to the full extent which any fair interpretation will give.   *   *   *   Conditions and provisos will be strictly construed against the insurers because they have for their object to limit the scope and defeat the purpose of the principal contract."

In Wood on Fire Insurance, at Sec. 59, it is said :

" It is the duty of the insurer to clothe the contract in language so plain and clear that the insured can not be mistaken or misled.   *   *   *   Having the power to impose conditions and being the party who draws the contract, he must see to it that all conditions are plain, easily understood, and free from ambiguity.   *   *   *   Failing to employ a clear and definite form of expression, the benefit of all doubts will be resolved in favor of the assured.   The courts will not permit the assured to be misled or cheated where there is any sort of justification, from the language used, for the interpretation placed by him upon the instrument.   A contract drawn by one party, who makes his own terms and imposes his own conditions, will not be tolerated as a snare to the unwary, and if the words employed, of themselves, or in connection with other language used in the instrument, or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer, the policy will be construed to favor the assured."

In Vol. 1, 2d Ed., Wood, page 145 :

" If there is any doubt, in view of the general tenor of the instrument of writing, whether the words used therein are to be taken in an enlarged or restricted sense, all things

being equal, that construction should be taken which is most beneficial to the promisee. This rule of construction is especially applicable to the construction of policies of insurance."

The courts of this state have adopted and emphasized the above quoted principles and rules for the interpretation and construction of insurance contracts. Hardesty v. Forest City Ins. Co., 77 Ill. App. 413; Teutonia Ins. Co. v. Bonner, 81 Ill. App. 231; Detroit F. & M. Ins. Co. v. Chetlain, 61 Ill. App. 450; Illinois Mut. Ins. Co. v. Hoffman, 31 Ill. App. 295; Commercial Ins. Co. v. Robinson, 64 Ill 265; Phœnix Ins. Co. v. Tucker, 92 Ill. 64; Niagara Ins. Co. v. Scammon, 100 Ill. 644; Schroeder v. Trade Ins. Co., 109 Ill. 157; Healey v. Mutual Accident Ass'n, 133 Ill. 556; Traveler's Ins. Co. v. Dunlap, 160 Ill. 642; The Niagara Fire Ins. Co. v. Heenan & Co., 181 Ill. 575; Globe Mut. Life Ins. Ass'n v. Wagner, 188 Ill. 133.

Appellant's counsel contend that it is the duty of the court to so construe the contract in this case as to make each and all the answers appearing in parts I and II of the application strict affirmative warranties, so as to bring the case under the rule:

" A warranty in a contract of insurance must, if affirmative, be strictly and exactly true, and if promissory, must be literally fulfilled; the validity of the entire contract depends thereon, otherwise it becomes void. No departure can be allowed in the slightest particular in any matter warranted. The very purpose and meaning of a warranty is to preclude all questions for what purpose it was made, or whether it was made for any purpose at all by the insured. Once it is inserted in the policy, or made a part thereof by proper reference, it binds the assured as made, it matters not whether the breach proceeds from fraud, negligence, misinformation, or to what cause non-compliance is attributed. If it be an affirmative warranty, and is false, there is a breach; and if it be promissory and is not strictly performed, the contract is void."

If the statements are strict affirmative warranties, they will be deemed and held to be material whether they are so in fact or not, and if shown to be " untrue in the slightest

particular" there can be no recovery on the policy, without reference to whether such statements were intentionally or innocently made; for if false, they may be availed of by the insurer to render the policy void, although the insured may have believed them to be true.

Counsel for appellee contend that the court should so construe the contract as to make the answers representations in contradistinction from warranties, so as to bring the case under the more liberal rule :

" To avail as a defense it must be averred and proved that the statements were false, that the insured at the time of making them knew they were false, or made them so recklessly or under such circumstances as that in good conscience willful falsehood should be imputed to him, and that the fact concealed or the falsehood expressed was material to the risk."

The rule invoked by appellant's counsel is an exceedingly harsh rule and courts universally hesitate to apply it—will not apply it, except where, after considering all the language pertaining to the contract together, it is apparent that both parties so understood and intended it. If it be at all doubtful in meaning or contains contradictory provisions, or any statement from which the assured might have been led to believe that his policy would not be rendered void by reason of the fact that after his death it might be found that some of his statements, though honestly made, " were untrue in the slightest particular," then the courts will not hold that the statements are strict affirmative warranties, though it may be so stated in some part or parts of the contract. Joyce on Insurance, Vol. 3, Sec. 1957; Globe Mutual Life Ins. Ass'n v. Wagner, 188 Ill. 133; Continental Life Ins. Co. v. Rogers, 119 Ill. 474; Illinois Mason's Benevolent Society v. Winthrop, 85 Ill. 537; Northwestern Benevolent and Mutual Aid Ass'n v. Cain, 21 Ill. App. 471; Continental Life Ins. Co. v. Thoena, 26 Ill. App. 495; Moulor v. American Life Ins. Co., 111 U. S. 335. When all the writings pertaining to the contract of insurance involved in this case are considered together in the light of the environment under which they were executed, it is a fair and just inter-

pretation to put upon them, to hold, as we do, that the answers and statements made by the assured were not intended or understood by him to be strict affirmative warranties. The nature and purport of many of the questions were such that no man could have, of his own knowledge, absolutely correct information concerning them. He was therefore warranted in believing that he was only required to truthfully answer according to his understanding and recollection. It can not be believed by any disinterested, intelligent person, that the assured, in answering the questions, for instance, as to the ages, respectively, of his paternal grandfather, paternal grandmother, maternal grandfather and maternal grandmother, at the respective dates of their deaths, understood and intended that if after he had paid for his insurance up to the date of his own death, and been by death deprived of the opportunity of defending his earthly estate, it should be made to appear that any one of those long buried ancestors had died at an age, one year, or one day even, younger or even older, than the age stated in his answer, that his policy should be absolutely void. The questions and answers in part III of the application clearly show that appellant did not rely and act upon the assured's answers and statements as absolutely true and free from possibility of error or mistake. They inquire of the medical examiner as to the length of time he had personally known assured, and as to his opinion of the truth of the statements, etc., and further, when appellant had received the application at its home office, duly examined and considered it, placed its own construction upon it and approved the risk, it forwarded to the assured the policy, upon the back of which as one of the conditions, being the provision, that, "due proof of the age of the assured must be submitted with the proofs of death, and the amount of the assurance due under this policy at its maturity, shall in no case be more than the premium charged under this policy would have purchased at the society's rates in use at the date of issue of this policy for the assured's true age." When the policy containing this provision was tendered to

the assured and the premium demanded, was he not warranted in believing that if he had made an honest mistake, through ignorance, lapse of memory or otherwise, in answering questions, this would not render his policy absolutely void, and does this not also evidence that appellant then so understood it?

The construction we have given the contract eliminates many of the questions raised and argued, and such of them as we deem of importance and not so disposed of we will discuss, but not in the order in which they are presented by counsel.

The testimony shows that in the month of November, 1896, the assured had an attack of sickness; that on this occasion he was in a semi-conscious condition, in a stupor, and remained so for about two days, and that it was about three or four or five days before he could walk unassisted; that he was sick about eight or ten days and after that he attended to his duties on the farm as usual and looked after his business. Some of the witnesses think from his appearance that he never did fully recover from that attack, while others think he did. Appellant's medical examiner, who had been personally acquainted with him for ten years, states in his report of the examination that he was at that time in perfect health, and rated him in class " A," and Dr. Ziegler, the physician who treated the assured during this attack in 1896, states that he never told assured that he had apoplexy or paralysis, that it might have been the result of some malarial trouble. He thought assured had recovered from the trouble—he had recovered from the acute symptoms; that a man does not ordinarily recover in two or three or four days from a stroke of paralysis. The stupor that he found the assured in might have been occasioned by other things than apoplexy or paralysis. It might have been the result of indigestion or over-eating, or other sickness of some kind. There is testimony tending to show that after the attack of sickness in 1896, the assured, in speaking of it, stated that he had had something like apoplexy. In this connection, and also for the purpose

of establishing the fact that the assured had been rejected by another insurance association, appellant introduced the depositions of the president and of the medical director of Des Moines Life Association, and duly identified and introduced an application, by the assured, for insurance in the latter named association, of date July 21, 1897. This application was rejected because of the statements in it that applicant had an attack of paralysis on the 19th day of November, 1896. In this application the assured answered that he had " slight paralysis of left side November 19, 1896," and that Dr. Ziegler was his physician on that occasion. Dr. Ziegler was the examining physician who made the examination and report on the application to the Des Moines Life Association, and states that he wrote down the answers as the applicant gave them, and that the applicant signed his name to the application.

As to the making of the application to appellant society, which it is claimed by appellant contains such fraudulent and untrue answers and statements as render the policy here sued on, wholly void, John G. Buchannan, appellant's agent who solicited the insurance, took the application and delivered the policy, testifies : "This paper (indicating the application) is an application for insurance to Provident Savings Life Assurance Society of New York;" that he took the application and the assured signed it; that he was then soliciting insurance for appellant, and acted in that capacity from April, 1898, to January, 1901; that his duties were to solicit applications, collect premiums and deliver the policies; that he, the agent, wrote down the answers and that the assured did not read over the application either before or after he signed it. Question No. 23 in this application says : "Has application to grant or restore assurance on your life ever been made, which was not complied with in the form and amount asked for? If so, state every such case, when, and the cause or causes." Question to the witness : " Now, I will ask you whether you read over to Mr. Cannon at the time this application was taken, this question No. 23 ? A. I don't think I did." That the assured told him either

before or about that time that he had been rejected for insurance by the Des Moines Life Association; that he told assured that a rejection by the Des Moines Life Association was not a rejection, and that was why the assured answered this way; that he, the agent, knew of the rejection prior to the writing of the application; that Dr. Pinkstaff made the medical examination upon the application to appellant in the case at bar; that he and Dr. Pinkstaff drove in a buggy to assured's house; that they, the agent and medical examiner, had talked together before about Cannon's insurance, and on the way over he told Dr. Pinkstaff that Cannon, the assured, had been rejected by an assessment company and that he did not think it necessary to mention that as they, assessment companies, were not considered authority on insurance, and Dr. Pinkstaff told him he would take care of that; that he, the agent, had been informed that the assured had had a spell of sickness in 1896; that he wrote down the assured's answers correctly so far as he gave them, and that he also wrote down answers which the assured did not give; that he does not know how many answers he wrote down which the assured did not give; that he did not read over to the assured all the questions, but that he did read over to him some of them; that he does not know how many nor which ones of the questions he did not read over to the assured; can't pick out any question and say that he did or did not read that particular question to him; that it was generally known at the time the application was taken that the assured was sick in 1896.

Appellant is a corporation, and as such can act only through agents. Buchannan and Pinkstaff, who participated in the making of the application upon which the policy in this case is based, were both agents of appellant, with full power to act in the capacity in which they did act. Before the application was made they had knowledge of the facts that the applicant had been rejected by the Des Moines Life Association, and that he had an attack of sickness in 1896. Their knowledge, and especially the knowledge of

Buchannan, was appellant's knowledge. When the application is filled out, with a knowledge on the part of the agent of the facts, whether such knowledge be communicated by the applicant, or the agent had become "otherwise cognizant of them," though the application be signed by the applicant, still, if there be no collusion between the agent and the applicant, the application in such case is as much the act of the insurance company as of the assured, and the company will not be permitted to avail itself of a false or erroneous statement in the application concerning such facts. An insurance company can not insist upon the forfeiture of a policy for any cause within the knowledge of its agent at the time the policy was issued. Globe Mut. Life Ins. Ass'n v. Ahern, 191 Ill. 167; Security Trust Co. v. Tarpey, 182 Ill. 52; Phenix Ins. Co. v. Stocks, 149 Ill. 319; Rockford Ins. Co. v. Nelson, 65 Ill. 415; Reaper City Ins. Co. v. Jones, 62 Ill. 458; Andes Ins. Co. v. Fish, 71 Ill. 620; Atlantic Ins. Co. v. Wright, 22 Ill. 462; Metropolitan Life Ins. Co. v. Larson, 85 Ill. App. 143. And with reference to the answers and statements of the assured above discussed as well as to those concerning the assured's usual medical attendant, without reference to either the law or fact of waiver or estoppel, to avail as a defense it devolves upon appellant not only to prove that such answers and statements, or one of them, are fraudulent or untrue, that applicant knew that they were false at the time they were made, and that the fact concealed or the falsehood expressed was material to the risk; and these questions are all questions of fact for a jury to determine. Ætna Life Ins. Co. v. King, 84 Ill. App. 171; Metropolitan Life Ins. Co. v. Larson, 85 Ill. App. 143; Globe M. Life Ins. Ass'n v. Wagner, 188 Ill. 133; Continental Life Ins. Co. v. Rogers, 119 Ill. 474.

It is insisted that the trial court committed many errors in the giving, modifying and refusing of instructions. These need not be discussed in detail. The principal questions raised as to the instructions are involved in the foregoing discussion. While the instructions are not, in all respects, technically accurate, they are in harmony with the law

applicable to the controlling facts of this case, as we hold it to be, and are not inaccurate, in any respect, to a degree calculated to mislead the jury. In connection with this branch of the case, it is contended that the court erred in refusing to submit to the jury special interrogatories Nos. 3, 8, 9, 11 and 12, asked on behalf of appellant. Nos. 3, 9, 11 and 12 are fully covered by Nos. 1, 5 and 10, of those submitted at the instance of appellant, and the question involved in No. 8 was not so developed by the evidence as to become a controlling issue in the case.

Counsel contend that the trial court erred in suppressing two certain depositions taken and produced on behalf of appellant, and that for this error the case should be reversed. The record discloses that appellant sued out a commission to take the depositions upon oral interrogatories of two witnesses who resided at Detroit, Michigan. The notice and commission is to take the depositions of Charles E. Foote and Thomas Dillon. The commission appoints James V. Oxtoby as commissioner, and authorizes him to take the depositions of the two witnesses named, at the office of the Michigan Mutual Life Insurance Company, in the city of Detroit, Michigan, on the 7th day of August, 1901, and from day to day until completed. The depositions produced are depositions of Charles E. Foote and George W. Sanders, and were taken by one Allister Cochrane, a notary public. These depositions were taken at the time and place required by the notice and commission, but appellee was not present, nor represented at the taking of them, nor did he, or any one for him, agree that the depositions might be taken by the notary, Cochrane. The commissioner, Oxtoby, was absent from the city at the time fixed by the commission for taking the depositions, and in the absence of appellee and his counsel appellant's counsel called in the notary public above mentioned and proceeded to take the depositions produced.

Appellant's counsel contend that in case of the absence or sickness of the commissioner named in the commission to take the depositions, any judge, master in chancery,

notary public or justice of the peace may act. The authorities cited and relied on do not sustain this position as applicable to the facts of this case. It is true that the notice need not contain the name of any person or class of persons as commissioners, but the commission must do so. It may specifically name any competent, disinterested person, or it may designate generally any judge, any master in chancery, any notary public, any justice of the peace; or it may designate any judge, master in chancery, justice of the peace or notary public; or it may designate any particular person, as A B, or any judge, master in chancery, notary public or justice of the peace, etc. In whatever form the commission runs, it can only be executed by the commissioner named in the commission or designated therein. He must be a person expressly named in the commission, or he must be a person of a class expressly designated in the commission. He gets his power to act from the commission, and must be embraced within its language. The commission in the case at bar empowers James V. Oxtoby alone to act, and neither mentions nor includes any other person or class of persons. The motion to suppress was made and sustained before the trial was commenced, and before the jury was called, and appellant did not ask a continuance for the purpose of retaking these depositions, neither was the action of the court in suppressing them stated in the motion or in any manner presented as a ground for new trial. It appears to us, upon the whole, that substantial justice has been done in this cause by the verdict and judgment, and that the record before us contains no such error as calls for a reversal of the case.

The judgment of the Circuit Court is affirmed.