## Switchmen's Union of North America v. Charles G. Colehouse.

### Gen. No. 12,987.

1. LIMITATION—*when plea setting up contract as to time within which suit must be instituted, insufficient.* A plea which sets up that the contract of insurance provided that suit should be brought thereon within six months after the rejection of the claim and that it was not so brought, is insufficient where it does not allege that notice of rejection was given.

2. INSURANCE—*"totally and permanently disabled," as used in insurance contract construed. Held,* that the words "totally and permanently disabled," as used in the contract in this cause, were not limited to a total and permanent disablement arising from

certain specified injuries, but referred to any injury which produced a total and permanent disablement.

3. INSURANCE—*how contract of, construed.* Where the insurer fails to employ a clear and definite form of expression, the benefit of all doubts will be resolved in favor of the insured.

Action of *assumpsit.* Appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed February 7, 1907.

JAMES C. MCSHANE, for appellant.

KRETZINGER, GALLAGHER, ROONEY & ROGERS, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellee sued appellant on a benefit certificate issued by appellant to him March 25, 1902, which certificate is as follows:

"This certificate witnesseth, that in consideration of all dues and assessments paid, and to be paid, in accordance with the Laws, Rules and Regulations of the Beneficiary Department of the Switchmen's Union of North America, by Charles G. Colehouse, said Beneficiary Department agrees and undertakes to pay at the time of the death of said Charles G. Colehouse, or in case of his total disability, as defined by said Laws, Rules and Regulations, the sum of money specified by said Beneficiary Department of the Switchmen's Union of North America, which said sum of money shall, in case of total disability, be paid to the said Charles G. Colehouse, his conservator or assigns, and in case of his death to Mary Colehouse, his mother, upon the surrender of this certificate, in both cases, and the proof, as required by said Laws, Rules and Regulations of said Beneficiary Department, of such total disability or death of said member.

"It is further agreed that said member may, by the return and cancellation of this policy and the payment

of all dues and assessments then owing, direct the issue of another certificate payable to another beneficiary, it being expressly understood that the power to change the beneficiary named in this certificate remains with said member.

"It is further expressly agreed and understood that the Laws, Rules and Regulations of said Beneficiary Department of which said Charles G. Colehouse is a member, together with his application for membership in said Beneficiary Department, are made part of this agreement.

"In testimony whereof, the said Beneficiary Department of the Switchmen's Union of North America has, by its Grand Master, and Grand Secretary and Treasurer, signed, sealed and delivered this certificate, this twenty-fifth day of March, 1902, at Buffalo, N. Y.

FRANK T. HAWLEY,

Grand Master.

M. R. WELCH,

[SEAL]        Grand Secretary and Treasurer.

I accept this certificate on the conditions named.

CHAS. GEORGE COLEHOUSE."

The declaration is in the usual form and avers, among other things, that section 16 of article 8 of defendant's constitution and laws provides, that a member shall be considered totally and permanently disabled who shall, after becoming a member of defendant's beneficiary department, receive any physical disability which will permanently disqualify him from performing the duties of a switchman; and that, August 4, 1902, while the plaintiff was performing his duties as a switchman, certain molten iron fell into the left eye of the plaintiff and destroyed the sight of the same, and because of such physical disability he became totally disabled and permanently disqualified to perform the duties of a switchman, according to the true intent and meaning of the laws of the beneficiary department of said defendant. The defendant pleaded the general issue and two special pleas. The cause was tried by the court, without a jury, by agreement of the

parties, and the court found for the plaintiff and assessed his damages at the sum of $1,345, and rendered judgment on the finding.

The first special plea is not relied on in argument, and, therefore, must be deemed waived. In the second special plea it is averred, in substance, that section 19 of article 8 of the constitution and laws of defendant's beneficiary department provides: ''All right of action upon beneficiary certificates shall be absolutely barred, unless proofs of death or total disability shall be forwarded to the grand secretary and treasurer, as hereinafter required, within six months after such death or permanent disability occurs; and it shall be likewise barred, unless such action shall be commenced, in some court of competent jurisdiction, within six months after the final rejection of the claim by the Grand Lodge.'' The plea then avers that the plaintiff's claim was finally rejected by the grand lodge prior to March 1, 1903, and that the supposed cause of action did not accrue to plaintiff within six months before the commencement of the suit. The court sustained a demurrer to the plea and the defendant elected to stand by the plea. The demurrer was properly sustained. It is not averred in the plea that plaintiff was, in any way, notified of the rejection of his claim by the grand lodge. This is an essential averment. The plaintiff could not know, without notice, when, if ever, the grand lodge would reject his claim, and he was not required to sue before he had such knowledge.

In Chase v. S. & C. R. R. Co., 38 Ill. 215, Chase subscribed for stock, on condition that his subscription should not become due until $5,000 should be raised by subscription, loan, donation or otherwise. He was sued on his subscription, but no notice had been given him that $5,000 had been raised. Held, that without such notice there could be no recovery, the court saying: ''Upon the remaining point, if plaintiff in error was bound by his subscription, it is well settled he should have had notice that the five thousand dollars

had been raised by subscription, loan or donation, before suit brought. This was a fact peculiarly within the knowledge of the defendants, and the rule is, where anything is to be done by one party, on the performance of some acts by the other, this other must give notice of such act, unless it be one that carries notice of itself."

Pioneer Reserve Ass'n v. Jones, 111 Ill. App. 156, is to the same effect. In that case the secretary of the local lodge was notified of the rejection of the claim; but the court held that such secretary was the agent of the appellant and the notice was not notice to the claimant. If the law were otherwise than as stated, the grand lodge might reject a claim, record its action, and the claimant might not know of the rejection till after the expiration of the six months. The term limited does not begin to run till notice given to the claimant, or till he has knowledge of the rejection in some way.

It is not contended that the sight of plaintiff's left eye was not totally lost as averred in the declaration, while he was engaged in his duty as a switchman, or that he was not, at the time of said accident, a member in good standing of the defendant and of its beneficiary department; and the evidence tends to prove that the loss of his left eye totally disqualified him to act as a switchman. The contention of the defendant's counsel is, that the plaintiff was not totally disabled, within the meaning of section 16 of article 8 of defendant's constitution and laws, which section is as follows:

"Any member suffering, by means of physical separation, the loss of four fingers of one hand, at or above the second joint, or three fingers and thumb of one hand, at or above the second joint, or the loss of one foot, at or above the instep, or who shall become totally blind or totally deaf, shall be considered totally and permanently disabled, and shall receive the full amount of his beneficiary certificate; likewise any physical disability that may permanently disqualify a member from

performing the duties of a switchman; provided that such permanent disability occurred after he became a member of this department or was not caused improperly or through negligence.''

We do not understand defendant's counsel to contend that the evidence would not support a recovery, if the words ''any physical disability that may permanently disqualify a member from performing the duties of a switchman'' were unconnected with the specified instances preceding those words in the section; but, if we err in this, and counsel does so contend, we disagree with him. The contention argued by counsel is, that the ordinary meaning of the general language, ''any disability,'' etc., is restricted by the special injuries mentioned in the preceding part of the section, and that no member is to be deemed ''totally and permanently disabled,'' within the meaning of the section, if he has not suffered one of the injuries or misfortunes mentioned. The object of defendant's beneficiary department was not, as clearly appears from the language of the section, to insure against total disability to perform the duties of any and every occupation, but solely against total disability or disqualification to perform the duties of a switchman. This is evidenced not only by the specific injuries or misfortunes mentioned in the section, but by the concluding words, ''likewise any physical disability that may permanently disqualify a member from performing the duties of a switchman,'' and the special injuries and total blindness and deafness are mentioned merely as instances of total disability to perform the duties of a switchman. The defendant is a switchman's union, and the object of its beneficiary department is to provide for switchmen who may meet with accidents resulting in disability to perform their duties as switchmen. If nothing is to be regarded as total and permanent disability except the suffering one of the injuries specifically mentioned in the section, or the becoming totally blind or deaf, then if a heavy piece

of iron, or other material, should fall from a car on the head of a member of the beneficiary department, and so injuriously affect his brain as to permanently disable him from performing the duties of a switchman, he could not recover on his certificate. This is inconsistent with the object of defendant's beneficiary department, which it is material to consider. (Healey v. Mutual Acc't Ass'n, 133 Ill. 556, 560), and could not, as we think, have been the intention of the defendant. Other injuries may readily be conceived, which would permanently disqualify a member to perform the duties of a switchman, not specifically mentioned in the section.

In Union Mut. Acc't Ass'n v. Frohard, 134 Ill. 228, 234, the court say: "It is to be noted that the words used in the contract are words selected and used by the corporation itself, and are, therefore, to be interpreted most strongly against it, or that, at all events, they are to be construed according to their common and literal meaning, in favor of the insured." Herman v. Merchant's Ins. Co., 81 N. Y. 184, 188, is to the same effect.

In Wood on Fire Insurance, 2nd ed., section 60, the author says: "It is the duty of the insurer to clothe the contract in language so plain and clear that the insured cannot be mistaken or misled as to the burdens or duties thereby imposed upon him. Having the power to impose conditions, and being the party who draws the contract, he must see to it that all conditions are plain, easily understood, and free from ambiguity. In the language of the court in an English case, it 'ought to be so framed that he who runs can read. It ought to be framed with such deliberate care that no form of expression by which, on the one hand, the party assured can be caught, or by which, on the other, the company can be cheated, shall be found on its face.' Failing to employ a clear and definite form of expression, the benefit of all doubts will be resolved in favor of the assured. The courts will not permit

the assured to be misled, or cheated, where there is
any sort of justification, from the language used, for
the interpretation placed by him upon the instrument."
See, also, Provident Savings Life Assurance Society
v. Cannon, 103 Ill. App. 534, 544-5, and cases cited.
Can there be any doubt that a man of ordinary in-
telligence, on receiving and reading the certificate sued
on, in connection with section 16, would understand it
as applying to physical injuries or misfortunes which
would incapacitate him from performing the duties of
a switchman? We think not.

In Commercial Ins. Co. v. Robinson, 64 Ill. 265, the
court say: "Equivocal expressions in a policy of
insurance, whereby it is sought to narrow the range
of the obligations these companies profess to assume,
are to be interpreted most strongly against the com-
pany;" and in Queen's Ins. Co. v. Dearborn Savings
Ass'n, 175 Ill. 115, the court say: "The language
of the policy, particularly in determining whether the
liability is limited, is always to be strictly construed
against the insurer."

In Maynard v. Locomotive Engineers, etc., Ass'n,
51 Pac. Rep. 259, the language of the by-law under
which the plaintiff was insured, and which was in force
when an accident occurred which caused the perma-
nent loss of sight of his left eye, was as follows:
"Any member, while engaged in any lawful occupa-
tion, receiving bodily injuries, which alone shall cause
* * * total and permanent loss of eyesight, shall
recover the full amount of his policy." It was con-
tended that, to recover, the plaintiff must have be-
come permanently blind in both eyes; but the court
held the contrary, saying: "The right of recovery
in such a case as this appears to be within the fair
intendment of its provisions, and the amendment
simply makes their true meaning more apparent.
The by-law does not provide that the insured will
not receive the amount of his policy unless the inju-
ries are such as to cause the loss of the sight of

both eyes. There is no express provision, as will be observed, limiting the insurance to a total and permanent loss of the sight of both eyes; and upon reflection that the defendant claims and is supposed to be a beneficent institution, having for its object the mutual protection and relief of its members, and the payment of stipulated sums to the families of the unfortunate and disabled through accident among them, and that in a case like this the total and permanent loss of one eye disables, as appears from the record, the insured from pursuing his usual and accustomed occupation, it would be a rigid construction that would limit a recovery to cases of total blindness in both eyes, and thus effectuate by implication what the association failed to provide for in express terms. No such result is a necessary sequence to the language employed; for, where a person has become permanently blind in one eye, he may, with strict propriety, be said to have sustained 'total and permanent loss of eyesight.' The terms of the by-law in question must be interpreted liberally and reasonably, and, as they appear to be susceptible of two constructions, that must be adopted which will more nearly carry out the benign object of the association, and sustain the claim of the injured.''

The judgment will be affirmed.

*Affirmed.*