Ætna Life Insurance Co. v. King.

## Ætna Life Insurance Co. v. William King, Adm'r.

| 84 | 171 |
| 103 | 551 |

1. LIFE INSURANCE—*Representations and Warranties in Applications.*—Where all the language of an application for insurance, and the policy issued thereon, fairly construed together, does not amount to warranties, and the statements and answers contained in such application are true, they must be construed by the court as representations only, and not as warranties.

2. SAME—*Statements in the Application, Whether Warranties or Representations.*—Where the application for insurance on a person's life is expressly declared to be a part of the policy, and the statements therein contained are warranted to be true, such statements will be deemed material, whether they are so or not in fact; and if shown to be false, there can be no recovery on the policy.

3. SAME—*Statements in the Application When Warranties.*—Where the statements in the application are followed by a qualifying clause that if the policy has been obtained by fraud, misrepresentation or conceal-ment, it is to be null and void, such statements will constitute warranties.

4. SAME—*Suicide—Burden of Proof as to Insanity.*—Where the plea of insanity is interposed to an action upon a policy of life insurance and the plaintiff replies that at the time the alleged suicide was committed the insured was insane, the burden is upon him to show such insanity.

5. SUICIDE—*Not a Crime in America.*—In America, self-destruction is not a crime, and the meaning given to the word "suicide," in criminal law, seems to have been abandoned in the construction of insurance contracts.

6. SANITY—*Defined, Presumption From the Fact of Suicide.*—Sanity is the normal condition of man; it is presumed as to each individual; and it is incumbent upon the plaintiff in an action on a policy of insurance upon the life of a suicide to overcome this presumption by proof that the self-destruction was not the conscious, voluntary act of one responsible for his actions. Insanity can not be presumed from the mere fact of suicide.

Assumpsti, on a policy of life insurance. Trial in the Circuit Court of Pope County; the Hon. ALONZO K. VICKERS, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the February term, 1899. Reversed and remanded. Opinion filed September 5, 1899.

JAMES C. COURTNEY, attorney for appellant; W. D. BEAMES, of counsel.

Untruthful statements of the insured in his application, as to his present condition of health, knowingly made,

avoids the policy, whether considered as representations or warranties. Ins. Company v. Young, 113 Ind. 159; Ins. Co. v. Rutherford, 95 Va. 773; Barteau v. Ins. Co., 67 N. Y. 595; Cantrell v. Ins. Co., 98 Mass. 381; Miller v. Ins. Co., 31 Iowa, 216; Ins. Co. v. Rubin, 79 Ill. 402; Life Ins. Co. v. Cummins, 53 Ill. App. 530.

Insanity is not presumed from the fact that the party committed suicide. The burden of proving insanity is on the party affirming it. Joyce on Insurance, Vol. 4, Sec. 3775.

Where insanity is alleged to avoid a plea of suicide, the burden of proof is on the plaintiff. Weed v. Life Ins. Co., 70 N. Y. 561; Phadenhauser v. Ins. Co., 7 Heisk. (Tenn.) 567; Life Ins. Co. v. Peters, 42 Md. 414; Nelson v. Equitable Life Ass. Soc., 73 Ill. App. 133.

As sanity is the normal condition of man, it is presumed as to each individual, and it was incumbent upon the plaintiff to overcome this presumption by proof that the self-destruction was not the conscious act of one responsible for his actions; that the assured was in fact insane. Insanity can not be presumed from the mere fact of suicide, for the reason that experience has shown that self-destruction is often perpetrated by the sane. Weed v. Mutual Life Ins. Co., 70 N. Y. 561.

THOMPSON, LIGHTFOOT & SHERIDAN, attorneys for appellee.

The great weight of authority in this country undoubtedly is, that the term suicide implies an act of self-destruction deliberately done by a person capable of forming a legal intention; and that where one kills himself while insane, even though he intends that the result of the act shall be fatal, but through the impairment of the reasoning faculties is not able to understand the moral character, nature, consequences and effect of such act, or is impelled by an irresistible impulse which he can not withstand, such act is not a suicide, within the legal sense of the term, and is not within the contemplation of the parties to a contract of life insurance, and in such case the insurer would be

liable. Grand Lodge I. O. M. A. v. Wieting, 68 Ill. App.
125; Grand Lodge I. O. M. A. v. Wieting, 168 Ill. 408; New
Home Life Association v. Hagler, 29 Ill. App. 437; Life Ins.
Co. v. Terry, 15 Wall. (U. S.), 580; Lawrence v. Mutual Life
Ins. Co., 5 Ill. App. 280; Suppiger v. Mutual Ben. Ass'n, 20 Ill.
App. 595; Schultz v. Insurance Co., 40 Ohio St. 217; Insur-
ance Company v. Rodel, 95 U. S. 232; Manhattan Life Ins.
Co. v. Broughton, 109 U. S. 121; Bigelow v. Berkshire Life
Ins. Co., 93 U. S. 284; Accident Ins. Co. v. Crandal, 120 U.
S. 527; Conn. Mutual Life Ins. Co. v. Akens, 150 U. S. 468;
Ritter v. New York Ins. Co., 169 U. S. 139; Breasted et al.
v. Farmers' Loan and Trust Co., 4 Hill (N. Y.), 73.

When suicide was pleaded by the defendant, the material
averment, because of the legal meaning of the term, carries
with it the burden of proving sanity of the deceased, and
plaintiff's instructions announce the proper rule of law.
Metropolitan Life Ins. Co. v. McKenna, 73 Ill. App. 283;
Freeman v. Travelers Ins. Co., 144 Mass. 572; Gooding v.
U. S. Life Ins. Co., 46 Ill. App. 307; Phillips v. Louisiana
Eq. Life, 26 La. Ann. 404; Guardian M. L. Ins. Co. v.
Hogan, 80 Ill. 35; Mutual Ben. Life Ins. Co. v. Davies, 9
S. W. Rep. 812.

MR. JUSTICE CREIGHTON delivered the opinion of the
court.

This was an action in assumpsit in the Circuit Court of
Pope County, by appellee against appellant, to recover on
a policy which appellant had issued on the life of appellee's
intestate. Trial was by jury. Verdict and judgment in
favor of appellee against appellant for $2,000.

The application and policy are set out *in haec verba* in
the declaration. The application contains the following:

" I do hereby declare and warrant that I am now in good
health, of sound body and mind, and that the following
statements are full, correct and true; and that I have no
knowledge or information of any disease, infirmity or cir-
cumstance, not stated in this application, which may render
insurance on my life more hazardous than if such disease,
infirmity or circumstance had never existed; and I do

hereby agree that the declarations and warranties herein made and the answers to the following questions, shall be the basis and form a part of the contract (policy) between me and said company, and that if the same be in any respect untrue, said policy shall be void."

Among the questions asked and answered in the application was:

"17.  Have you now or have you had any signs of any nervous affliction or predisposition thereto?  No."

In the policy it is expressly stated that the policy is issued in consideration of the representations and declarations made in the application, and that it is issued and accepted subject to certain provisions therein stated, among them being the following:

" The answers, representations and declarations contained in or endorsed upon the application for this insurance (which application endorsed hereon, is hereby referred to and made a part of this contract) are warranted to be true, and if this policy has been obtained by fraud, misrepresentation or concealment,  *  *  *  then  *  *  *  this policy shall become and be null and void."  *  *  *

To the declaration appellant filed, among others, two special pleas, referring to and setting up the substance of the matter above quoted from the application and policy, and averring:

"That at the time of making said application the said Walter King was affected with a nervous disease called neurosis, or nervous prostration, and was at the time under the treatment of a physician for said disease, and had full knowledge thereof.  Defendant further avers that the said Walter King represented and stated in said application, in answer to a question therein propounded at the time of making said application, that he did not then have any signs of any nervous affection or predisposition thereto. Defendant avers that the said representation of said Walter King, in answer to said question, was then and there untrue, and the said Walter King well knew that the same was untrue at the time of making said application.  Defendant further avers that said nervous affection was a disease which would render insurance on the life of said Walter King more hazardous than if it had not existed, and so by

Ætna Life Insurance Co. v. King.

reason of the premises said policy of insurance became void, and this the defendant is ready to verify."

To these pleas the court sustained a general demurrer. Appellee's counsel contend that we should not consider the error assigned by appellant as to the action of the trial court in sustaining appellee's demurrer to these pleas, because of the failure, as they contend, of appellant's counsel to abstract the record in conformity with the requirements of the rules of this court. We have considered their objections to the abstract and compared the abstract with our Rule No. 23, and find that the rule has been fairly complied with. They also contend that the demurrer was properly sustained, because, when all the language of the application and policy referred to in the pleas is fairly construed together, it does not amount to a warranty that the statements and answers contained in the application are true, and that such statements and answers must be construed by the court to be representations only and not warranties.

In Connecticut Mut. Life Ins. Co. v. Young, 77 Ill. App. 440, we discussed at some length the distinction between warranties and mere representations in an insurance contract, and the effect of each upon the rights of the parties to such contract. The language in the application and policy, referred to in the pleas, were it not for the qualifying and superseding clause, " *and if this policy has been obtained by fraud, misrepresentation or concealment,* * * * *then* * * * *this policy shall become null and void,*" * * * would clearly constitute a warranty, and this case would fall in the class with Covenant Mutual v. Young. But this clause so qualifies and supersedes the statements, answers and conditions of which it is a part as to render them mere representations, and places this case in class with Continental Life Ins. Co. v. Rogers, 119 Ill. 474.

When the statements and answers are warranties it is sufficient to plead them and aver that they were false, without reference to their materiality, for they will be deemed to be material whether they are so or not, and without reference to whether they were intentionally or innocently

made, for if false they may be availed of by the insurer to render the policy void, although the insured may have believed them to be true. But when the statements and answers are not warranties, but mere representations, to avail as a defense it must be averred and proved that they were false, that the insured at the time knew they were false, or made them so recklessly or under such circumstances as that in good conscience willful falsehood should be imputed to him, and that the fact concealed or the falsehood expressed was material.

It is true, as contended, when considered in connection with all the other language of the application and policy and construed most strongly against the insurer, as the law in such cases requires, the statements and answers in this case are mere representations. But the pleas aver, in so many words, that the representation that the insured did not then have any signs of any nervous affection or predisposition thereto, was untrue, and state wherein it was untrue; aver that the insured at the time of making the application knew it was untrue, and aver wherein it was material: "That said nervous affection was a disease which would render insurance on the life of said Walter King more hazardous than if it had not existed." As we understand the law, appellant set up in substance a good defense. The court erred in sustaining a general demurrer to these pleas.

Counsel for appellee insist that a misrepresentation as to matter that did not contribute to the death of the insured is immaterial, and that as these pleas contain no averment that the matter of the misrepresentation pleaded contributed to the death of appellee's intestate, the pleas were for that reason bad. The only authority supporting this proposition that we have been referred to or can find, is Christian v. Connecticut Mutual Life Ins. Co., 143 Mo. 460, and in that case the holding is based solely on Sec. 5849, Revised Statutes of that State, the court saying: "This section, being in force when the policy in question was issued, became part and parcel thereof." We have no such statute in this State.

The admission of expert testimony upon the issue as to the sanity of the insured at the time he took his own life, under the policy and pleadings in this case, was proper, and it was also proper to receive the opinion of such experts upon hypothetical questions. But the opinion should have been taken only as to the mental condition of the insured, and not as to the character of the act of self-destruction. The question should not be whether the act was a sane or insane act. The question should be whether the insured was, at the time he committed the act, a sane or insane man. The question put to the expert witnesses at the conclusion of the hypothesis was, we think, somewhat misleading.

The policy contains a clause rendering it void in case the insured should "commit suicide." Appellant pleaded this clause, with an averment that the insured did commit suicide. To which plea appellee replied that, at the time the alleged suicide was committed, the insured was insane. There was evidence *pro* and *con* as to this issue, and at request of appellee the court gave to the jury an instruction, in substance, telling the jury that the burden of proof was upon appellant as to that issue, and that if appellant had failed to establish by a preponderance of the evidence that the insured was sane at the time he killed himself, then the jury should find in favor of appellee. Appellant asked and the court refused to give an instruction in substance telling the jury that the burden of proof as to that issue was upon appellee, and if appellee had failed to prove by a preponderance of the evidence that the insured was insane at the time he killed himself, then the jury should find in favor of appellant.

The question upon which side rests the burden of proof as to the mental condition of the insured in such cases is here squarely presented. Appellant's counsel contend that as appellee pleaded insanity in his replication, the burden of proving it necessarily rested upon him. Appellee's counsel contend that when suicide was pleaded by the appellant, the averment of suicide carried with it the burden of

proving sanity of the deceased. They say this must be so because of the legal meaning of the term "suicide." That the term does not simply mean the killing of one's self, but that to constitute the act of self-killing (suicide), the person committing the act must at the time have sufficient mental capacity to know the moral character and consequences of the act; and for the party pleading "suicide" to fail to prove such mental condition is to fail to prove a material fact necessary to give to the act of self-killing the character of suicide.

In Grand Lodge I. O. M. A. v. Wieting, 168 Ill. 408, it is said :

"Suicide at common law ranked as a crime, and was punishable by forfeiture of goods. * * * In America, however, self-destruction is not a crime, and the meaning given to the word suicide in criminal law seems to have been abandoned in the construction of insurance policies, and the phrase 'committed suicide' has been declared synonymous with other phrases employed to convey the idea of voluntary intentional self-destruction."

And in the same case it is said :

"There is no presumption of law that self-destruction arises from insanity. The law presumes normal conditions to exist—hence that all men are sane."

The normal condition, sanity, is presumed, and therefore need not in the first instance be proven. It is the abnormal condition, insanity, that avails to defeat the voidance of the policy, and in the case last above quoted it is further said :

"Insanity, being an abnormal condition, must be proven as a question of fact."

The burden of proving insanity is upon the party affirming it. Joyce on Insurance, Vol. 4, Sec. 3775. The burden of proof to establish insanity is, in such cases, upon the plaintiff, by whom it is alleged. 1 Dillon's Circuit Court Reports, 403. It was incumbent upon the plaintiff to show that the insured was insane when the act of self-destruction was committed. Knickerbocker Life Ins. Co. v. Peters, 42 Md. 414. It has been uniformly held that as sanity is the normal condition of man, it is presumed as to each indi-

vidual, and that it was incumbent upon the plaintiff to overcome this presumption by proof that the self-destruction was not the conscious, voluntary act of one responsible for his actions. Insanity can not be presumed from the mere fact of suicide. Weed v. Mut. Ben. Life Ins. Co., 70 N. Y. 561.

"When proof is made showing that the deceased died by suicide, it follows by the terms of the contract that the defendant was not liable. It then devolved on the plaintiff to prove the insanity of the deceased at the time of the suicide, in order to relieve the act of self-destruction from the consequences of avoiding the contract." Mary Phadenhauser v. Germania Life Ins. Co., 7 Heiskell, 567.

While the question in the exact form presented to us, so far as we have found, has not been directly discussed by either our Appellate or Supreme Court, it is apparent from our examination of the long list of life insurance cases contained in our reports, in which the element of suicide was involved wherein the question of insanity arose, that they have usually, if not universally, been tried on the theory that the burden of proving the insanity of the deceased rested upon the plaintiff, and in Nelson v. The Equitable Life Assurance Society of the United States, 73 Ill. App. 133, the court, though not discussing the question, does express an opinion that the burden in such cases is upon the plaintiff. Since the holding of our own Supreme Court —as expressed in Grand Lodge I. O. M. A. v. Wieting, that in America self-destruction is not a crime, that the meaning given to the word suicide in criminal law has been abandoned in the construction of insurance policies, and that the phrase commit suicide is synonymous with other phrases employed to convey the idea of intentional self-destruction—there remains little force in appellee's argument based on the common law meaning of the word suicide. We are of opinion the court erred in its action on the instructions as to the burden of proof on the question of insanity.

The court committed no error in refusing to submit to the jury the special interrogatory complained of.

As this case must be reversed and remanded, and may be submitted to another jury, we will not discuss the weight of the evidence.

The judgment of the Circuit Court is reversed and the cause remanded.