Ney Bagby et al., Appellants, v. Court of Honor, Appellee.

INSURANCE—*what not material to risk as a matter of law.* While it is true that no recovery can be had upon a life policy of insurance which is obtained by fraud and misrepresentation on the part of the insured as to the material representations affecting the risk, yet the authorities do not go to the extent of holding that in a case

where statements and answers were made by an applicant for insurance to the representative of the company or association concerning matters of family history, in good faith, believing them to be true, that such answers or statements must in all cases be taken and considered material, as a matter of law.

*Assumpsit.* Appeal from the Circuit Court of Pulaski county; the Hon. W. N. BUTLER, Judge, presiding. Heard in this court at the February term, 1909. Reversed and remanded. Opinion filed November 13, 1909.

L. M. BRADLEY, for appellants.

GEORGE E. MARTIN and WALL & CASTER, for appellee; WM. B. RISSE, of counsel.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellants, who are minors suing by their guardian, seek to recover the amount of a benefit certificate, issued by appellee upon the life of their mother, Georgia Bagby, who died April 6, 1907.

To the declaration of appellants, which set out the certificate in which they were named as beneficiaries, appellee pleaded the general issue and several special pleas, the latter relying upon and setting forth certain alleged false answers made by Georgia Bagby to the questions propounded to her at the time she made her application for membership. Appellee paid into court the amount deceased had paid to it upon the policy, with costs to the time of payment. The verdict and judgment were in favor of appellee and the court ordered the amount deposited with it, covering premiums paid, to be turned over to appellants. At the time of her death Georgia Bagby held a beneficiary certificate, for the sum of $2000, issued by appellee, payable to appellants. This certificate was the reissue of a former one and subject to all the provisions of the original certificate. The original certificate was issued January 20, 1900, when she was 29 years of age. She made

written application and was examined by Dr. Hall Whitaker, local examiner at Olmstead, in Pulaski county, Illinois, near which place she lived. The answers to the printed questions were written down by the examining physician and the application signed by the applicant. It contained the provision "that this application and the law of this order, shall form the sole basis of my admission to and membership therein, and of the benefit certificate to be issued me by said Supreme Court of Honor; that any untrue or fraudulent statement or answer made to the district medical examiner, or any concealment of facts, intentional or otherwise in this application * * * shall forfeit the right of myself and that of my beneficiaries to any and all benefits and privileges therein, or arising therefrom." In her answer concerning her family history, she stated that her father died of pneumonia, when he was 46 years of age, having been sick seven days, and that her mother died of pneumonia at 41 years of age, after a sickness of ten days. In answer to the question "Have either of your parents or any of your paternal or blood relations had consumption," she answered, "No." Under the head of "Hints to Medical Examiner" connected with the printed application is the statement: "If petitioner pleads ignorance of family history, the examiner should elicit some approximate idea of the causes of death. Having thus defined the family history as exactly as may be, the examiner has it within his power to decide how far the petitioner may be considered pre-disposed to the diseases of which his relatives died." Under the head of "Remarks," the examiner inserted, "Mrs. Bagby doesn't know anything of her family from the fact she never lived among them since she was small and never heard of them." The examiner in answer to questions on the application to be answered by him, stated that he had made a careful examination of the thorax, that the respiration was full, easy and regular and the murmur clear and distinct over both lungs; that there was no

indication of disease of the organs of respiration or their appendages; that there was no habitual cough or expectoration or occasional difficulty in breathing; that the petitioner would probably outlive the estimated expectancy; and that he recommended her for membership. The application and examination were dated June 23, 1900. About seven years later Mrs. Bagby died of what was pronounced to be quick consumption.

It appeared from the evidence that her father died in 1890 after a long illness and her mother in 1892 after an illness of some duration. Mrs. Bagby had been away from home in the west during most of her father's illness, but was at home both when he and her mother died. The jury in addition to their general verdict in favor of appellee, found, in answer to special interrogatories, that George Brown, the father, and Elizabeth Brown, the mother of the insured, were both afflicted with consumption prior to death; that the illness of each was of long duration; that each died of consumption and that the insured was at home at the time each of them died.

From the evidence the mother and father of Mrs. Bagby appear to have been in good health until long after her birth and there was evidence tending to show that the father's decline in health originated from a knife wound in the left breast, some years before he died.

The evidence relied upon by appellee as to the cause of death of Mrs. Bagby's father and mother was the testimony of a physician who stated that he was not their attending physician but that he called on both of them during their illness, either in the place of or in consultation with another physician. As to the father he states, "The cause of Bud Brown's death to my best knowledge, was that he had consumption. * * * Well, my judgment would be he died from the disease he had when I saw him last, unless something else developed, and that was consumption." And as to the mother, "I could not be positive what Mrs. Elizabeth Brown

died of. My best judgment was when I saw her that she would die of consumption. I saw her over a week or ten days, as I remember, I wouldn't be positive, and I considered her in the last stage.'' The evidence is not satisfactory upon the question whether Mrs. Bagby knew positively of what disease her father and mother died, and it is contended by appellants that she might well have supposed they died of pneumonia. The physician above referred to testified that he may have told the mother that the father had ''lung trouble,'' but he could not say whether Mrs. Bagby, the insured, was in the room or in his presence at that time.

The benefit certificate or policy does not in direct terms make the answers or statements of the insured, in reply to the specific inquiries contained in the application, warranties, and they are not treated as direct warranties by the pleas filed in this case, nor by the briefs and arguments of counsel for the respective parties.

It is claimed, however, by appellee, that such statements and answers are material representations and that the materiality of the same is a question of law for the court and not a question of fact for the jury. The court below adopted appellee's theory and instructed the jury that such answers and statements were, as matters of law, material to the risk; that if they found the father and mother or either of them died of consumption and that the statement as to the causes of their death made by the insured was relied upon by appellee, ''then it makes no difference whether the incorrect statements were made intentionally or in good faith through honest mistake, as a matter of law, in such case said incorrect statement would avoid the certificate here sued on, and the plaintiffs cannot recover.''

In one instruction the answers made by Mrs. Bagby to the questions propounded to her were set out and the instruction then concludes ''and if you further believe from a preponderance of the evidence that the

said answers to the said questions, as made in the said application for insurance, were not true, then this would be a false representation as will avoid the certificate of insurance here sued on, whether the untrue answers were made by the said Georgia Bagby, either knowingly or innocently or by mistake or accident, and in such case the plaintiffs cannot recover in this suit, and your verdict should be for the defendant.''

Appellants on the other hand claim that the materiality of the representations made by the insured in her application, was a question of fact for the jury, but the court refused to give their instructions embodying that theory. It is not without value to note that the examiner was authorized in appellee's instructions to him, in case the petitioner pleaded ignorance of family history, as it is apparent from the written statements made by the examiner Mrs. Bagby did, to elicit some approximate idea of the cause of death, and when such history was so defined, to decide the petitioner's predisposition to certain diseases; also that the examiner set down the answers to the questions in the petition signed by the petitioner. It was therefore a question whether the answers in the application were the direct answers of the applicant or the approximate idea of the causes of death elicited from the applicant and defined by the local examiner. While it is true that no recovery can be had upon a life policy of insurance which is obtained by fraud and misrepresentation on the part of the insured as to the material representations affecting the risk, yet the authorities do not in our opinion go to the extent of holding that in a case where statements and answers were made by an applicant for insurance to the representative of the company or association, concerning matters of family history, in good faith, believing them to be true, that such answers or statements, must in all cases be taken and considered material, as a matter of law.

This court in Provident Sav. Life Assur. Society v. Cannon, 103 Ill. App. 534, where it was claimed by the

Society that false answers had been made by the insured to questions contained in his application, said: "With reference to the answers and statements of the assured above discussed, as well as to those concerning the assured's usual medical attendant, without reference to either the law or fact of waiver or estoppel to avail as a defense, it devolves upon appellant, not only to prove that such answers and statements, or one of them, are fraudulent or untrue, that applicant knew they were false at the time they were made, and that the fact concealed or the falsehood expressed, was material to the risk; and these questions are all questions of fact for a jury to decide."

In Mfg., etc., Ins. Co. v. Zeitinger, 168 Ill. 286 (a fire insurance case), it was held, that "When there is no moral fraud, a representation, although false, does not avoid the policy unless such representation be material, and its materiality is a question upon the evidence for the jury."

In Globe Mut. Life Ins. Assn. v. Wagner, 90 Ill. App. 444, the doctrine laid down in the above case is quoted and relied upon in a life insurance case, and that case was afterwards affirmed by the Supreme Court (188 Ill. 133).

The question here presented differs from that raised in Fraternal Tribunes v. Hanes, 100 Ill. App. 1, as in that case the certificate itself made the statements of the member in his application for membership, and the statements certified by him to the medical examiner, a part of the contract, and by such application, the truthfulness of the statements was warranted; and it was held that a plea which alleged that the applicant had made a false answer concerning the cause of his father's death, *and that he knew it to be false,* was a good plea and that if the representation was false there could be no recovery.

We are of opinion that the court erred in giving the instructions for appellee above referred to, and for

that reason the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE DUNCAN took no part in the consideration and decision of this cause.