**Barbara Delvaux, Defendant in Error, v. Metropolitan Life Insurance Company, Plaintiff in Error.**

## Gen. No. 16,834.

1. APPEALS AND ERRORS—*who may assert error.* When a proposition of law is given by the court as submitted, error cannot be assigned thereon by the person who submitted it.

2. INSURANCE—*reinstatement.* Where the insured in an application for restoration of his policy represents by a printed statement therein that he has not, since the issuance of the policy, been sick or afflicted with any disease or been consulted or attended by any physician and that he expressly agrees that "if the foregoing statements be in any respects untrue, the policy will be void and all premiums paid forfeited," the mere fact that he had consulted a doctor for eczema, which had disappeared, does not avoid the restoration since such concealed fact had no reasonable bearing on the risk assumed.

3. INSURANCE—*reinstatement.* Where a premium is paid under a conditional acceptance of an application for the restoration of a life insurance policy and, after a medical examination, the home office approves such acceptance and issues a home office receipt, which recited that the same would not be binding unless counter-

signed by the superintendent of the local district to which it was sent, the failure to countersign does not prevent such restoration from taking effect where it further appears that, after neglecting for several months to sign and issue said receipt to the applicant, the insurer finally refused to do so, because of insured's subsequent poor health.

Error to the Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912. Rehearing denied October 17, 1912.

HOYNE, O'CONNOR, HOYNE & IRWIN, for plaintiff in error; CARL J. APPELL, of counsel.

MATTHEW J. HUSS, for defendant in error.

MR. JUSTICE FITCH delivered the opinion of the court.

The Metropolitan Life Insurance Company, hereinafter called the defendant, issued, August 17, 1901, its twenty-year endowment policy for $1,000, upon the life of Peter Delvaux, payable to Barbara Delvaux, plaintiff below. The premiums were payable half-yearly on February 17th and August 17th, and it was the custom of defendant to allow thirty days grace. In February, 1908, Peter Delvaux obtained a loan from the company, for an amount equal to the full loan value of the policy at that time, and to its cash surrender value on August 17, 1908. Delvaux did not pay the premium due in August, 1908. He lived on a farm at Berwyn, Cook County, Illinois. One Brown, an agent for defendant, in Chicago, called on Delvaux on August 14, 1908, to collect the premium. Delvaux told Brown that he was unable to pay the premium then, but would try to dispose of his crops and arrange to pay it later. When Brown called the second time—three days later—Delvaux told him he had decided to give up the policy. Thirty or forty days after August 17, 1908, Brown called again on Delvaux and told him that the insurance company had instructed him, Brown, to call and

tell Delvaux that his insurance could be revived by paying the premium then over due, without any additional expense, and without any examination, so long as Brown could see that Delvaux was in good health. Delvaux replied that "he would not consider it." On November 28, 1908, Delvaux called at the Chicago office of defendant to revive the policy. Brown asked him if he was well; Delvaux replied that he was. Thereupon, Brown took him into the room of one Mills, the superintendent of defendant's Chicago office, where he signed an application for the restoration of his policy and gave Mills $23.02, the amount of the over-due premium. The application was on a printed blank, and recites that "It is hereby declared that Peter Delvaux, present occupation, farmer, residence, South Berwyn, Ill. * * * is this day alive and in sound health; * * * that he has not, since said policy was issued, been sick or afflicted with any disease * * * or been consulted or attended by any physician; * * * and it is expressly agreed * * * that if said company grant said restoration, it shall be under the condition that if the foregoing statements be in any respect untrue, the policy will be void and all premiums paid forfeited." As evidence of the payment of the premium, he was given what is called a "provisional receipt," reciting that Delvaux' policy had lapsed for the non-payment of the August premium, and that he "has deposited with me, as his agent, $23.02, to be applied to the payment of said premium, provided that the Metropolitan Life Insurance Company, at its home office, approves the application for the restoration of said policy submitted this day. If so approved, I agree to pay to the company the said money, and to deliver to the said former insured the regular home office receipt in exchange for this receipt." This was signed by Mills. Eight or ten days later, Delvaux was notified that he must submit to a physical examination, and he was so examined by a physician selected by the com-

pany. The physician reported in December, 1908, that so far as he could ascertain from his examination, Delvaux was in sound health. Some time after the doctor's report and prior to February 14, 1909, the New York office of defendant sent to its local agent or superintendent in Chicago the "regular home office receipt" referred to in the provisional receipt. This home office receipt, however, stated upon its face that it was not binding upon the company until countersigned by the company's cashier at the home office, or the "superintendent of the district in which payment is made," and it never was so counter-signed, and was never delivered to Delvaux, but remained in the company's office in Chicago until within a few days of the time the next premium was due. In February, 1908, it was handed to Brown, with instructions to deliver it to Delvaux if found to be in good health. Brown called on Delvaux at his home, and found that he was then not in good health. Brown reported the fact of Delvaux's illness to the company's superintendent in Chicago. Three days later, Brown called again and found Delvaux in bed. Brown asked for the "provisional receipt." Delvaux' mother handed it to Brown, who thereupon laid $23.02 on the bed and departed. Delvaux died of tuberculosis March 7, 1909, aged thirty-five years.

In the summer of 1908, Delvaux had consulted a Dr. O'Brien several times at the doctor's office for eczema on the hands and face, and in the latter part of 1908, four or five times for acute gastritis. Just when these last visits to the doctor's office began, the doctor repeatedly testified that he could not remember. During the "first days of January," 1909, Delvaux consulted a Dr. Whamond. The latter testified that Delvaux said to him at that time that "he had been sick several weeks and had been treating with Dr. O'Brien. * * * I found him suffering from gastritis; * * * I suspected a lesion of the lungs; * * * about the middle

of January, I examined his sputum and found he was suffering from tuberculosis; * * * it might have had four, five or six weeks duration, perhaps. Seemed to act very rapidly with him.'' On this evidence the court, sitting without a jury, found the issues for the plaintiff, and after deducting from the face of the policy, ($1,000), the amount loaned on it by the company, rendered judgment for the balance, $800.66. To reverse this judgment defendant has sued out this writ of error.

A number of propositions of law were submitted by the defendant to be held or refused by the trial court. In one of these the court held that the policy lapsed by non-payment of the premium due August 17, 1908; that thereafter it was optional with the company to revive the policy; that the delay in acting on the application to revive would not revive the policy, unless the facts and circumstances were such as to lead Delvaux to believe that the company had approved his application. Whether this proposition is right or wrong is immaterial. The defendant is not in a position to complain of this holding of the court, for it requested the court to so hold.

, The court refused to hold: First, that plaintiff was not entitled to recover ''under the undisputed facts in this case;'' and second, that if Delvaux consulted, or was attended by, a physician, or was sick, or afflicted with any disease, after the date of the policy and prior to his application to restore the same, then the plaintiff could not recover.

The only material controversy over the facts, is as to the date when Delvaux first called on Dr. O'Brien, complaining of gastritis. Defendant's counsel insist that the evidence shows that it was before the date of the application for restoration, November 28, 1908. We have examined the record on this point with care, and find that while on direct-examination, in answer to a leading question, Dr. O'Brien testified that it was

before December, yet on cross-examination he would not say it might not have been in December, but said he was sure it was before January, because he kept records after January 1, 1909, and kept none before that date. Dr. Whamond's evidence above quoted, in view of the uncertainty of Dr. O'Brien's evidence as to the exact date of this first visit, is consistent with, and supports, the view that Delvaux' first visit to Dr. O'Brien concerning the gastritis was subsequent to November 28, 1908; and that neither Delvaux, nor Dr. O'Brien, knew on that date, that Delvaux was not in good health. At least, the evidence on that question was altogether too indefinite and uncertain to amount to proof of the charge that Delvaux knowingly misrepresented or concealed the facts regarding his attack of gastritis and the tuberculosis when he signed the application for restoration. The only fact shown, by a preponderance of the evidence, to have been knowingly concealed by Delvaux when he signed the application for restoration, November 28, 1908, was the fact that he had consulted Dr. O'Brien three times in the summer of 1908 for eczema, which apparently disappeared before November. Upon reason and authority, we are of the opinion that the mere concealment of that single fact is not, of itself, sufficient to avoid the contract, if otherwise valid. The fact concealed, if known to the insurer, could have had no reasonable bearing upon the risk assumed.

In Peterson v. Manhattan Life Insurance Co., 244 Ill. 329, an applicant for life insurance made the answer: "Has not been sick," to a request in the application calling for "The names and addresses of physicians who had attended you or whom you have consulted during the last ten years, and for what diseases;" and it was shown by the evidence that within the ten year period, the applicant had suffered an attack of muscular rheumatism and had consulted a doctor at that time. The trial court held, as a proposition of law,

.that the answer to the question was a warranty, under the terms of the insurance policy, but that to constitute a breach of such warranty, the disease shown to have existed must be something other than a temporary ailment which readily yielded to treatment. The Supreme Court held that the answer "has not been sick" was not responsive to the question, but prefaced its conclusion in that regard with the following language (p. 349): "We are disposed to regard as sound, the trial court's view of the character of the illness, proof of which would be essential to show a breach of the warranty." That proof of a mere temporary ailment is not sufficient to constitute a breach of a warranty contained in an application for life insurance, is also held in the following cases; Billings v. Metropolitan Life Ins. Co., 70 Vt. 477; Woodward v. Iowa Life Ins. Co., 104 Tenn. 49; Franklin Life Ins. Co. v. Galligan, 71 Ark. 295.

In discussing the legal effect of similar questions and answers contained in an application for life insurance, the Appellate Court of the Fourth District, in Provident Savings L, A. Soc. v. Cannon, 103 Ill. App. 534, 551, said: "With reference to the answers and statements of the assured above discussed, as well as to those concerning the assured's usual medical attendant, without reference to either the law or fact of waiver or estoppel, to avail as a defense it devolves upon appellant not only to prove that such answers and statements, or one of them, are fraudulent or untrue, that applicant knew that they were false at the time they were made, and that the fact concealed or the falsehood expressed was material to the risk; and these questions are all questions of fact for a jury to determine. Aetna Life Ins. Co. v. King, 84 Ill. App. 171; Metropolitan Life Ins. Co. v. Larson, 85 Ill. App. 143; Globe M. Life Ins. Assn. v. Wagner, 188 Ill. 133; Continental Life Ins. Co. v. Rogers, 119 Ill. 474." That case was affirmed by the Supreme Court in 201 Ill.

260 (without, however, passing directly upon this point), and was followed by the same Appellate Court in Bagby v. Court of Honor, 151 Ill. App. 371, and by the Appellate Court of the Second District, in Kidder v. Supreme Assembly, etc., 154 Ill. App. 489, 493.

In Globe Life Ins. Assn. v. Wagner, 188 Ill. 133, the court held that a statement by an applicant for life insurance to a medical examiner that none of his brothers was dead, when in fact one had been dead for four years, was not such a misrepresentation of a material fact as to bar a recovery on the policy, in the absence of proof that such misstatement was intentionally and fraudulently made.

In Minnesota Life Ins. Co. v. Link, 230 Ill. 273, it was held that answers to questions put by a medical examiner relating to the condition of health of the insured at the time of his application for insurance, and as to whether the applicant had ever suffered from any of an enumerated list of more than sixty diseases, were not to be construed as warranties, the proved falsity of which in any particular would prevent a recovery on the policy whether such statements were material or not, and whether made in good faith or not, but were representations merely, and that not only proof of their falsity, but also proof that they were material to the risk and were known to be false by the insured at the time they were made, is required in order to constitute a good defense to an action on the policy.

Both of the last two cases quote with approval from the opinion of Justice Harlan in Moulor v. American Life Ins. Co., 111 U. S. 335, which holds that the word "untrue" as used in such expressions as: "if either of said answers or statements be untrue in any respect, then this policy shall be null and void," cannot be given its literal meaning, but must be construed to mean fraudulently and intentionally untrue, if from the context or the nature of the inquiry or statement made, that meaning can be reasonably implied.

The words "sound health" as used in the application for restoration, mean "free from any disease or illness that tends seriously or permanently to weaken or impair the constitution." Clover v. Modern Woodmen of America, 142 Ill. App. 276; Court of Honor v. Dinger, 221 Ill. 176.

The questions here involved, then, come to this: First: Does the evidence show that on November 28, 1908, Peter Delvaux was, to his knowledge, affected with any disease tending seriously to impair his constitution, and second, does the evidence show that his failure to mention, at that time, that he had consulted a doctor regarding a temporary condition of eczema, was intentional and fraudulent? We think both these questions must be answered in the negative, upon the record before us.

It is also insisted that there was no acceptance by the insurance company of the application for restoration. The conditional acceptance by the Chicago office was approved by the "home office" of defendant, after a medical examination was had and a favorable result reported to the company. The "regular home office receipt" was issued by it and sent to the Chicago office. According to the terms of the "provisional receipt" it was Delvaux' right to receive and it was Mill's duty to deliver to him the "home office receipt" as soon as issued, and in exchange for the "provisional receipt." There was no evidence tending to show that Delvaux agreed to or was even aware of, any custom on the part of the insurance company's agents to withhold it until they or one of them should find the time or opportunity to make a further and later examination of the insured's condition of health. It is undoubtedly true that the insurance company had the legal right to accept Delvaux' application to restore his lapsed policy, upon such terms as it saw fit to impose; but having once imposed its conditions, and hav-

ing accepted his money upon the conditions so imposed, it could not thereafter add other and further conditions without his consent. We are unable to agree with the contention of defendant's counsel in this respect.

The judgment of the Municipal Court will be affirmed.

*Affirmed.*